**STATE of Missouri, Respondent,**

v.

**David HARRINGTON, Appellant.**

No. 53925.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 6, 1988.

Holly G. Simons, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

This is a direct appeal from David Harrington's (hereinafter defendant) conviction and $1,000 fine for second degree burglary in violation of § 569.170 RSMo 1986. Defendant contends the evidence was insufficient for the jury to find police had consent to enter a relative's home in order to question him about a burglary. Even if police had consent, defendant maintains he never voluntarily submitted to questioning. Thus, his subsequent confession to the burglary was not only coerced but tainted by an illegal arrest and should have been excluded as fruit of the poisonous tree. We find no coercion or taint and we affirm.

We review the question of the sufficiency of the evidence to support the conviction in the light most favorable to the state together with all reasonable inferences drawn therefrom, and disregard contrary evidence and inferences. *State v. Woods*, 620 S.W.2d 443, (Mo.App.1981).

The jury could reasonably find the following. St. Louis Police Detectives Edward Magee and Joseph McCulloch were investigating a report of a burglary at a condominium development under construction in the Baden area of North St. Louis. Some furnishings had been stolen from a display unit while a caretaker was away for dinner. A friend of the caretaker who lived nearby recognized one of the youths seen leaving the units with the items and the youth implicated defendant in the break-in.

Armed with this information, the detectives learned defendant lived with his grandmother at her home in North St. Louis County and they sought to question him there early on the evening of February 5, 1987. Finding no one home and working the late shift themselves, the officers returned to the house at 1:00 a.m. February 6, 1987.

With Detective McCulloch covering a rear exit of the home, detective Magee knocked at the front door and was admitted by defendant's grandmother. The officer then explained to her that defendant was wanted for questioning in connection with a burglary. The grandmother went to a bedroom where defendant was sleeping and apparently explained to him why the police were there. Defendant dressed and accompanied the detective to the district station. Once at the station, defendant was given his *Miranda* warnings. He then signed a written waiver of his rights and

implicated himself in the burglary by oral and written statements. The jury found defendant guilty of burglary and recommended a fine only, to be determined by the court, be imposed.

The single point on appeal raised by defendant is that the trial judge should have granted defendant's motion to suppress defendant's inculpatory statements because they were a product of an illegal arrest and involuntarily made. In essence, defendant's argument hinges on his contention that police illegally entered his grandmother's home and placed him under arrest. Almost as an afterthought and without support of authority, defendant now argues his inculpatory statements were made under duress and should have been excluded as involuntary. According to defendant's argument, the police questioning at the district station was inherently coercive not only due to the late hour but also because police knew defendant was under psychological stress since he had just returned from his mother's funeral. Under the totality of circumstances, and again without citation to authorities, defendant argues the inculpatory statements should have been excluded by the trial judge even if there was no illegal arrest.

While either a finding of an illegal arrest or involuntary statement would be sufficient to invoke the exclusionary rule, the rationale for the use of the rule in each instance differs widely due to the United States Constitutional protections that are violated. In the case of an involuntary statement, it is the Fifth Amendment's proscription against self incrimination that is being safeguarded by use of the rule. But in the case of an illegal arrest, the dictates of the Fourth Amendment and its proscription against unreasonable searches and seizures are at issue.

We are mindful that since federal constitutionally protected rights are involved here, any determination of the validity of an arrest must be made in the light of the standards imposed for the protection of such rights. *State v. Seymour*, 438 S.W. 2d 161, 162 (Mo.1969), citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–226, 13 L.Ed.2d 142 (1964).

The U.S. Supreme Court has taken pains to point out the Fourth and Fifth Amendments are not interchangeable. The Supreme Court has held that "although a confession after proper *Miranda* warnings may be found 'voluntary' for purposes of the Fifth Amendment, this type of 'voluntariness' is merely a 'threshold requirement' for Fourth Amendment analysis." *State v. Reynolds*, 619 S.W.2d 741, 745 (Mo.1981), (quoting *Dunaway v. New York*, 442 U.S. 200, 218, 99 S.Ct. 2248, 2259–2260, 60 L.Ed.2d 824 (1979)).

The distinction is necessary to understand the thrust of defendant's argument. Defendant relies principally on *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), to support his argument that even though defendant was given a *Miranda* warning, that warning could not cure the taint of an illegal arrest since "the exclusionary rule ... when utilized to effectuate the Fourth Amendment, serves interests and policies that are distinct from those it serves under the Fifth." *Brown* at 602, 95 S.Ct. at 2261.

Defendant's argument relies so heavily on his contention that he was illegally arrested his brief makes only conclusory statements, without citation to authorities, to support his belief police failed to have the proper consent to enter his grandmother's home and that police procured his confession illegally. These conclusory statements without support of authorities are in violation of Rule 30.06(d). Defendant's failure to cite authority for his proposition provides grounds for dismissing this point without review. *State v. Jackson*, 539 S.W.2d 493, 509 (Mo.App.1976), *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed. 2d 779 (1977).

In any event, this court is free to disregard contrary evidence and inferences and is to affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its findings. *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985) *cert.* dismissed, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1986). After review-

ing the trial transcript, this court finds there was sufficient evidence that defendant's grandmother consented to police entering her home to question defendant. This court also finds defendant, who the prosecutor persuasively brought out on cross examination has been convicted of tampering and stealing, was sufficiently versed in the criminal justice system to voluntarily sign a *Miranda* waiver and confess willingly to the burglary.

We turn now to the threshold issue of whether defendant's Fourth Amendment rights were violated by an illegal arrest.

Fourth Amendment guarantees against unreasonable searches and seizures are at their strongest in the home. "In terms that apply equally to seizures of property and seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639 (1980).

Defendant relies on the sanctity of the home to support his claim that he was illegally arrested in his grandmother's house when police forced him to accompany them to the station for questioning.

■ We have already resolved the issue of consent to enter the grandmother's home in the state's favor. But consent to enter the home does not end our inquiry since the state concedes police did not have probable cause to make an arrest after they were given consent to enter the home. Instead, the state's position is that defendant voluntarily accompanied police to the station and an arrest did not occur until after defendant made incriminating statements that gave probable cause to make an arrest.

Thus, properly framed, the issue that must be resolved is whether defendant was illegally seized in his grandmother's home in violation of the Fourth Amendment or whether defendant voluntarily accompanied police to the district station. Voluntariness is "a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–2048, 36 L.Ed.2d 854 (1973).

From the record before us, two police officers testified defendant voluntarily accompanied them to the station. Officer Magee testified defendant was free to decline his request to undergo questioning at the station. Defendant was not handcuffed and defendant's grandmother testified police said her grandson would be returned in 30 minutes. Defendant disputes the officers' testimony and the grandmother's testimony on the issue of voluntariness is ambiguous at best.[1]

From this record, we cannot say the defendant was "seized" at any point prior to police obtaining probable cause to make an arrest through defendant's own statements. The credibility of the officers' testimony was for the trial court's resolution. *State v. Blevina*, 581 S.W.2d 449, 454 (Mo. App.1979). In any event, we find this is not the type of "seizure" the Supreme Court envisioned in *Dunaway* which would trigger Fourth Amendment protections. *See State v. Reynolds*, 619 S.W.2d 741 (Mo.1981).

The judgment is affirmed.

STEPHAN, P.J., and PUDLOWSKI, J., concur.

---

1. The pertinent part of her testimony is as follows: "He (Magee) said, 'David, get up, put your clothes on, I have to take you out for questioning." He said, 'What?' He had to repeat himself. David said, 'We just buried my mother. Couldn't it wait till morning?' He (Magee) said No—he says no, and then he told me he'd bring him back in thirty minutes. Didn't bring him back all night."