**STATE of Missouri, Plaintiff–Respondent,**

v.

**Leslie HARRIS, Defendant–Appellant.**

No. 59268.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 14, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 1992.

Application to Transfer Denied
March 24, 1992.

Shaw, Howlett & Knappenberger; Charles M. Shaw, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

This appeal arises out of the judgments against the defendant for second degree murder, § 565.021, RSMo 1986; first degree assault, § 565.050, RSMo 1986; and armed criminal action, § 571.015, RSMo 1986. The judgments were obtained in the Circuit Court of St. Louis City and the defendant was sentenced to a total of 25 years imprisonment. On appeal the defendant alleges the trial court erred in: (1) failing to declare a mistrial because of repeated improper questions of the prosecutor; (2) failing to dismiss the defendant's indictment for murder because it was erroneously worded; (3) failing to declare a mistrial due to comments made by the prosecutor in his closing arguments; (4) failing to grant the defendant's motion for a new trial because the state failed to reveal a plea bargain with one of the witnesses; (5) overruling the defendant's motion to suppress a statement made by the defendant to the police; (6) submitting MAI–CR3d 302.04 defining reasonable doubt because it reduces the state's burden of proof; and, (7) failing to declare a mistrial when the prosecutor asked the defendant on cross-examination about a tatoo on his arm. We affirm.

The evidence presented at trial showed the following: On the night and early morning of July 3–4, 1989, Mark Nickels and Willie Jackson drove down to the St. Louis riverfront where the Veiled Prophet Fair was being held. Most of the festivities around the Gateway Arch were over so they decided to visit a popular area nearby, Laclede's Landing. While they were sitting in their vehicle at the intersection of Memorial and Washington Streets the de-

fendant drove up in his truck and was beside the passenger side of Jackson's car. Jackson was driving the car and Nickels was seated in the passenger seat.

Jackson and Nickels glanced over at the defendant in his truck and the defendant responded by asking "What the hell are you looking at?" Jackson and Nickels told the defendant they weren't looking at anything and the defendant again asked "What the hell are you looking at, niggers?" At this point Jackson and the defendant began to argue rather vigorously. The defendant turned to his girlfriend seated next to him, Jenny Waltman, and requested his gun which was in the glove box.

Waltman gave the defendant his gun and he leaned out the window and brandished the gun at Jackson and Nickels. When the two young men saw the gun they told the defendant they were sorry and that they didn't want any trouble. The defendant told Nickels "I want your friend that's driving the car." The defendant then shot Nickels in the head. After the shooting both vehicles sped away but Jackson stopped when he realized that Nickels was seriously wounded. The police arrived shortly thereafter and Nickels was taken away in an ambulance. It was later determined that he had died almost immediately from a gunshot wound to the head. The police investigation at the scene of the shooting and Jackson's car turned up no weapons but they did find a bullet lodged in the left door post.

After the shooting the defendant and Waltman sped away from the scene and went to Waltman's apartment. Either Waltman or the defendant wiped the fingerprints off the gun and placed it in a bag. They then left separately for a friend's apartment, Harry Hicks, and Waltman disposed of the gun in an apartment complex dumpster on the way. When the defendant arrived at Hicks' apartment he told his friend he had messed up and shot somebody.

When the defendant left Harry Hicks' apartment Harry called his brother Brett Hicks and told him the defendant's story.

Brett then saw a story about the shooting in the July 5, 1989 *St. Louis Post–Dispatch* which contained a composite sketch of the man who was believed to have shot Nickels. Brett recognized the defendant from the sketch and contacted him. The defendant told Brett he was going to shave off his beard in an attempt to change his appearance from that of the sketch.

On July 14, 1989, the defendant contacted his friend, Tim Baker, and asked Baker if he would be willing to provide an alibi for him. After the police questioned the defendant, on July 21, he again contacted Baker and told him why he needed an alibi and what Baker and his girlfriend should tell the police in the event the police contacted them. Although Baker and his girlfriend agreed to provide the defendant an alibi they eventually told police they were not with him and that he had asked for an alibi. The defendant was arrested on August 7, 1989, and after the police read him his *Miranda* rights he responded that he understood them and then said, "You've got me, what else can I say."

At trial the defendant called several witnesses who testified to the amount of fighting that had taken place on the night of the shooting. The defendant also testified and claimed that he shot Nickels in self-defense. At the close of all the evidence the jury found the defendant guilty of second degree murder, first degree assault and armed criminal action. This appeal followed.

In his first point on appeal the defendant alleges that the trial court erred in overruling his repeated requests for a mistrial because of various objectionable questions asked by the prosecutor. The defendant argues the prosecutor repeatedly ignored the rulings of the court in his attempts to interject the character of the deceased. In addition, the defendant claims the prosecutor continually asked leading questions, misquoted witnesses during cross-examination and attempted improper impeachment. Finally, the defendant argues, all the errors mentioned above were compounded by the court's admitting into evidence a picture of the deceased, because this was an-

other attempt to bring before the jury the good character of the victim.

■ The declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). The trial court is in a better position than an appellate court to evaluate the prejudicial effect since it has observed the incident giving rise to the request for a mistrial. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied*, 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). Therefore, we review this only to determine whether as a matter of law the trial court abused its discretion in not declaring a mistrial. *Id.*

■ Here, the defendant believes he was prejudiced because the prosecutor's improper questions placed the defendant in a position where he had to either object to the questions or allow them in. If he objects the defendant argues he is prejudiced because this would "cast a pall over the jury and cause the jury to believe that the defendant is either attempting to hide something or act in a cruel and malicious manner." To avoid this appearance the defendant would have to allow in impermissible evidence before the jury.

In ruling against the defendant's motion for a new trial based upon the allegations above the court agreed with the defendant that the prosecutor ignored rulings of the court and forced the defendant to repeat the same objections. However, the court ruled that in the totality of the circumstances those isolated instances did not deprive the defendant of a fair trial. We agree.

The trial lasted nearly two weeks and the defendant has pointed to relatively few instances of improper questioning by the prosecutor. In many of these instances the defendant's objections were sustained and the jury was admonished to disregard the question. The prosecutor did on occasion ignore the rulings of the court and we in no way condone these actions by the prosecu-

tor. However, the question remains whether the prosecutor's actions denied the defendant a fair trial and the trial court was in the best position to decide such a question. In addition, we must take into account the ample evidence against the defendant. This evidence includes eyewitnesses to the shooting, including the defendant's girlfriend, and the defendant's own statements and actions before his arrest. None of this evidence supports the defendant's claim of self-defense. Therefore, we agree with the trial court's decision that the relatively few improper questions asked by the prosecutor did not so prejudice the defendant as to deny him of a fair trial. "A conviction resulting from a fair trial should not be reversed for the purpose of disciplining and deterring prosecutors, particularly where the mechanism for discipline and deterrence is provided elsewhere." *State v. Smothers*, 605 S.W.2d 128, 132 (Mo. banc 1980).

■ Finally, the defendant argues that the errors mentioned above were compounded by the trial court allowing in a picture of the deceased. The defendant claims the photograph was irrelevant and immaterial and was an attempt by the prosecutor to interject the victim's character. This claim is raised in the argument section of his brief, but not in the point relied on. Thus, it is not preserved for appellate review. Rule 84.04(d, e), *Washington v. State*, 772 S.W.2d 728, 729 (Mo.App.1989). However, even if the photo was incorrectly admitted it had little if any probative value for the state and did not prejudice the defendant. Point denied.

In his second point the defendant claims the trial court erred in failing to dismiss his indictment for murder because the indictment was erroneously worded. The defendant was charged under § 565.020, RSMo 1986, which states "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." The indictment in the case at hand states in part, as follows "the defendant, after deliberation, knowingly killed or caused the death of Mark Nickels." The defendant

alleges the indictment is incorrect because it states "knowingly killed or caused the death" while the statute requires "knowingly caused the death." The defendant argues that "knowingly kills" requires less intent than "knowingly caused the death" and therefore the indictment is erroneous. In addition, the defendant argues the indictment is erroneous in that it reads "after deliberation" but does not contain the words "upon the matter" which are contained in the statute.

■■■ The test of sufficiency of an indictment is whether it contains all essential elements of the offense as set out in the statute and closely apprises the defendant of the facts constituting the offense. *Puckett v. State,* 782 S.W.2d 454, 455 (Mo. App.1990). *See* Supreme Court Rule 23.-01(b). Rule 23.01(e) states, "all indictments or informations which are substantially consistent with the terms of indictments or informations which have been approved by the Missouri Supreme Court shall be deemed to comply with the requirements of this Rule 23.01(b)." MACH–CR 13.02 states in pertinent part the following: "this defendant, after deliberation knowingly (killed) (caused the death of) . . . ." The defendant's indictment contains the exact language as provided in MACH–CR 13.02. In addition, the indictment contains all the essential elements of the offense of first degree murder and clearly apprised the defendant of the facts constituting this murder. Therefore the defendant's second point is denied.

■■■ The defendant's next point alleges the trial court erred when it refused to declare a mistrial during the prosecutor's closing argument because of certain comments made by the prosecutor. During his argument the prosecutor referred to the defendant as a "lunatic in a truck" and a "killer."

The declaration of a mistrial is a drastic remedy that should only be employed in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Schneider,* 736 S.W.2d 392, 400 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 786, 98

L.Ed.2d 871 (1988). The trial court is in a better position than an appellate court to evaluate the prejudicial effect of the incident, therefore, the decision of the trial court should not be overturned unless there is an abuse of discretion. *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986).

The prosecutor has a right to draw any inference from the evidence that he believes in good faith to be justified. *State v. Bostic,* 789 S.W.2d 804, 808 (Mo.App.1990). In *Bostic* the defendant claimed the court erred in allowing the prosecutor to refer to him as a "robber" during closing arguments. The court ruled against the defendant and noted the prosecution could reasonably have drawn an inference from the evidence that the defendant was a robber. *Bostic,* 789 S.W.2d at 809. Here, the evidence against the defendant included eyewitnesses and the defendant's own statements and actions. This evidence was more than sufficient to support the characterization of the defendant as a killer.

■■■ The prosecutor also referred to the defendant as "a lunatic in a truck." It could also be argued that there was sufficient evidence to support such a characterization of the defendant but the court sustained the objection and told the jury to disregard the remark. Thus, if the prosecutor's remark was improper it was cured by the trial court's instruction to the jury. *State v. Allison,* 745 S.W.2d 178, 181 (Mo. App.1987). Further, this remark was not repeated and taking into account the evidence against the defendant as compared to this one remark the defendant was not prejudiced. Point denied.

On his fourth point the defendant claims the trial court erred in failing to grant the defendant's motion for a new trial because the state failed to reveal to the defendant a plea agreement between the state and one of its witnesses. The defendant alleges that Jenny Waltman, who was charged with hindering prosecution, was told by authorities of the state that she would be placed on probation and her child could remain with her if she would give evidence

for the state that would incriminate the defendant. The defendant argues that the state must reveal such agreements that it makes with a witness and the state failed to do so here.

Supreme Court Rules 25.03 and 25.08 do require the state to reveal any plea agreement it makes with a witness in exchange for testimony at trial. However, the defendant has cited no facts at all to support his assertion above that there was a plea agreement between Ms. Waltman and the state. Instead, the evidence points to the contrary.

Both Waltman and the state contend there was no plea agreement between the parties. The facts show that at Waltman's guilty plea hearing on December 14, 1989, the state recommended that she receive three years imprisonment for hindering prosecution. The maximum penalty for such an offense is five years with no minimum term required. Waltman's sentencing took place on September 14, 1990, while the trial of the defendant was still in progress and after Waltman had testified at his trial. At the sentencing the prosecuting attorney handling Waltman's case told the court that Waltman had been cooperative with the state although not as cooperative as her attorney indicated to the court. Nevertheless the state held to its request of three years imprisonment for Waltman and, at her attorney's recommendation, she was granted probation and given a suspended imposition of sentence. The defendant has cited no facts to support his contention that there was a plea agreement between the parties and the record does not indicate any such agreement. Point denied.

On his next point the defendant alleges the trial court erred in not suppressing a statement made by the defendant after he was arrested. The defendant contends his statement, "You got me, what else can I say?," was merely an assertion of his Fifth Amendment right to remain silent and that the state cannot comment on a party exercising this right.

■ In reviewing the trial court's ruling on a motion to suppress evidence, we will view the facts and inferences therefrom in the light most favorable to the trial court's ruling, disregarding all contrary evidence and inferences. *State v. Bittick*, 806 S.W.2d 652, 654 (Mo. banc 1991). If the evidence is sufficient to sustain the trial court's findings we will affirm. *Id.*

■ The defendant is correct that the state cannot comment on a party exercising their right to remain silent. *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. Crow*, 728 S.W.2d 229, 230 (Mo.App.1987). However, here the defendant's statement was not an assertion of his right to remain silent, but rather a statement after he indicated he understood his rights. The defendant was arrested on August 7, 1989, and taken to the homicide division. He was read his *Miranda* rights and advised of the charges against him. The defendant indicated he understood his rights and when asked about the murder responded "You got me, what else can I say?". When questioned further the defendant said he would like to speak to his attorney before making any further statements. Thus, the defendant's statement was not an assertion of his rights and was made before he invoked these rights. Therefore, the trial court did not err in submitting this statement and defendant's point is denied.

■ The defendant's sixth point on appeal contends the trial court erred in submitting MAI–CR3d 302.04 as instruction No. 4 because it improperly defines reasonable doubt. The defendant argues the instruction reduces the states burden of proof and therefore violates the defendant's right to due process and a fair trial. The defendant cites the recent Supreme Court decision in *Cage v. Louisiana*, —— U.S. ——, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) in support of his contention.

Instruction No. 4 defines reasonable doubt as "firmly convinced of the defendant's guilt" and contains the exact language found in MAI–CR3d 302.04. In *State v. Antwine*, 743 S.W.2d 51, 62–63 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)

the Missouri Supreme Court found that "'firmly convinced' is essentially synonymous with 'beyond a reasonable doubt.'" In a more recent case the Supreme court decided that MAI–CR3d 302.04 "clearly requires that the jury find the defendant guilty beyond a reasonable doubt and merely explains that term to the jury, unlike the charge in *Cage*, which equated proof beyond a reasonable doubt with a lower standard." *State v. Griffin*, 818 S.W.2d 278, 282 (Mo. banc 1991). Thus, the court reaffirmed its holding in *Antwine* and found this instruction meets the constitutional requirement that the jury must be instructed that the defendant be proven guilty beyond a reasonable doubt. *Id.* Point denied.

The defendant alleges on his final point that the trial court erred in not declaring a mistrial because of a question asked by the prosecutor during his cross-examination of the defendant.

As we have stated twice earlier in this opinion, the declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way. *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). The trial court is in a better position than we are to evaluate the prejudicial effect since it has observed the incident giving rise to the request for a mistrial. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied*, 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986). Therefore, we review this only to determine whether as a matter of law the trial court abused its discretion in not declaring a mistrial. *Id.*

 Here, the prosecutor attempted to ask the defendant on cross-examination "Why, sir, do you exhibit on your arm the picture of an executioner with an axe...." The defendant did not answer the question and his objection was sustained. In addition, the trial court admonished the jury to disregard the prosecutor's question. Generally, the sufficiency of such immediate corrective action is within the sound discretion of the trial court. *State v. Alexander*, 729 S.W.2d 467, 469 (Mo. banc 1986). Given the facts that the prosecutor did not finish his question, the defendant did not answer the question, and the court took immediate corrective actions we find the trial court did not abuse its discretion in denying the defendant's request for a mistrial. Point denied.

Judgment affirmed.

STEPHAN and CRIST, JJ., concur.