STATE of Missouri, Respondent,

v.

Sheri Rae NOLEN, Appellant.

No. 19005.

Missouri Court of Appeals,
Southern District,
Division One.

March 22, 1994.

Matthew J. O'Connor, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Moulton Bryan, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

A jury found Sheri Rae Nolen (Defendant) guilty of forgery, in violation of § 570.090.-1(4), RSMo 1986. The trial court sentenced her as a prior offender to four years in prison.

Defendant raises two points on appeal. She first claims the trial court should have declared a mistrial when the assistant prosecutor, during closing argument, commented on Defendant's prior criminal record. Second, she claims the trial court should not have submitted to the jury a "reasonable doubt" instruction patterned after MAI–CR 3d 302.04.

On September 10, 1992, Defendant presented a check to a clerk at Consumer's Supermarket in Joplin, Missouri. The $159.33 check was for $139.33 in groceries and $20 cash. It was drawn on the account of Shirley Shaffer at First National Bank of

Nevada, Missouri. When the clerk asked for identification, Defendant offered her driver's license. The clerk recorded on the check that the person passing it matched the person on the license.

Shaffer had known Defendant for many years before this incident and considered her to be a friend. In May or June 1992, Shaffer became too ill to walk, and Defendant began running errands for her, mostly to buy groceries or to take Shaffer's dogs to the veterinarian. To pay for these expenses, Shaffer would each time provide Defendant with a check, on which Shaffer would write the date, to whom the check was payable, and her signature. She trusted Defendant to later fill in the correct amount.

Shaffer was hospitalized in September or October 1992. About that time she noticed that her checking account was overdrawn. Eventually, she discovered that Defendant had written the check to Consumer's without permission. Defendant admitted that she had signed the check in Shaffer's name. Shaffer testified that she had never given Defendant permission to sign Shaffer's name to a check and that the only person authorized to write checks on the account was Shaffer. Nothing on the September 10, 1992, check to Consumer's was in Shaffer's handwriting.

*Comments During Closing Argument*

■ At trial, after all the preceding evidence had been adduced, Assistant Prosecuting Attorney Dean Dankelson made his closing argument. What follows is part of that argument, including (in italics) the portion Defendant finds objectionable. Also included are some of Dankelson's preceding statements and the subsequent exchange between Dankelson, the defense counsel (Mr. Perry) and the trial judge. At the beginning of the statement below, Dankelson was challenging the credibility of Harvey Norman (Defendant's boyfriend and one of her witnesses at trial). The State had previously established that Norman had himself been convicted of forgery.

DANKELSON: ... I will admit that, just because [Norman] committed a crime in the past does not make him a liar when he comes up here. But it's a fact you can consider, it is a fact you can consider. *And when Ms. Nolen got up on the stand, when the defendant got up, she's admitted to three prior convictions, there were two misdemeanors and a felony passing bad check. So she's passed bad checks before and knew the defendant —*

PERRY: Judge, may we approach the bench?

[Counsel approached the bench and the following proceedings were had.]

PERRY: Judge, I think his argument is getting awful close to arguing something other than credibility of a witness.

THE COURT: I agree with you.

DANKELSON: I wasn't going any further with it, Judge.

THE COURT: I'm going to sustain your objection which I think you're getting ready to make, or have made. Correct?

PERRY: Yes.

THE COURT: That objection will be sustained. And do you wish me to admonish the jury?

PERRY: I would ask that the jury—a mistrial be declared.

THE COURT: I'm going to overrule that, I don't think it's reached that point.

PERRY: Then I'd ask that the jury be instructed to disregard the last comment of the prosecutor.

Following a brief discussion with the attorneys about the proper wording of an admonishment, Judge Crawford made the following statement to the jury:

The objection of the defense will be sustained, the jury is instructed to disregard the last statement of the prosecutor to the effect that you must remember that she has been previously convicted in Pettis County of passing a bad check. Now, you may proceed, Mr. Dankelson, you have approximately three and a half minutes remaining.

■ In reviewing this matter, we are mindful of the following principles. First, declaring a mistrial is a drastic remedy that should be exercised only in extraordinary circumstances. *State v. Feltrop*, 803 S.W.2d 1, 9 (Mo. banc 1991), *cert. denied,* —— U.S.

——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1992). Such circumstances occur only when no action short of a mistrial would remove the prejudice claimed. *State v. Herron,* 863 S.W.2d 6, 8 (Mo.App.1993). Usually, an admonition to the jury cures any prejudicial effects of prosecutorial comments. *State v. Williams,* 784 S.W.2d 309, 313 (Mo.App. 1990); *State v. Wren,* 643 S.W.2d 800, 802 (Mo.1983).

■ Second, the trial court possesses the "best coign of vantage to assess the prejudicial effect of prosecutorial remarks." *Wren,* 643 S.W.2d at 802. Our review therefore is limited to deciding whether, as a matter of law, the trial court abused its discretion in refusing to declare a mistrial. *Feltrop,* 803 S.W.2d at 9; *State v. Young,* 701 S.W.2d 429, 434 (Mo. banc 1985), *cert. denied,* 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986).

■ Third, the trial court's discretion in controlling closing argument is broad, and wide latitude is accorded counsel in their summaries. *State v. Boswell,* 849 S.W.2d 739, 740 (Mo.App.1993); *State v. McDonald,* 661 S.W.2d 497, 506 (Mo. banc 1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1984). To constitute an abuse of discretion that requires reversal, the prosecuting attorney's statements "must be plainly unwarranted and clearly injurious to the accused." *State v. Mahurin,* 799 S.W.2d 840, 844 (Mo. banc 1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). Those statements must have had a "decisive effect on the jury's determination." *State v. Parker,* 856 S.W.2d 331, 333 (Mo. banc 1993).

■ As Defendant correctly points out, "[i]t is improper to argue prior unconnected crimes as reflecting upon the defendant's character or as a basis for conviction in the case on trial." *State v. Guernsey,* 577 S.W.2d 432, 435 (Mo.App.1979). The only legitimate purpose for which prior convictions may be used is to impeach the defendant's credibility. *State v. Mobley,* 369 S.W.2d 576, 580 (Mo.1963). It is also true, as defense counsel stated in his objection at trial, that Dankelson's remark got "awful close to arguing something other than credibility of a witness."

Nonetheless, given the context of Dankelson's remark and the fact that he was never allowed to complete his sentence, we cannot find with certainty that he actually overstepped the boundary between legitimate and improper argument. Just before the remark complained of, Dankelson told the jury that the prior convictions of Defendant's boyfriend bore on the man's credibility. One could reasonably assume that, by mentioning Defendant's prior convictions, Dankelson had the same purpose in mind. Dankelson said as much during the ensuing bench conference, and the court did not challenge his motives.

The trial court was well within its discretion, however, when it halted Dankelson's argument and admonished the jury. By this action, the trial court clearly cured any conceivable prejudicial effect Dankelson's remark may have had.

The facts before us are somewhat similar to those in *State v. Richardson,* 810 S.W.2d 78 (Mo.App.1990). In that case, a defendant convicted of selling cocaine appealed the trial court's refusal to grant a mistrial when the prosecutor made the following statement during closing argument: "Do not think that this is just his first time doing it; this is the first time he has gotten caught." No facts were in evidence to support this statement, and the trial court instructed the jury to disregard the prosecutor's comment.

In reaching its decision to affirm the trial court's ruling, the appeals court focused on three important factors. First, the defendant did not challenge the sufficiency of the evidence against him; second, the trial court had sustained defense counsel's objection to the prosecutor's comment and had admonished the jury to disregard the remark; and third, the prosecutor had immediately abandoned the objectionable argument. *Id.* at 79. After emphasizing that admonishment of the jury usually cures any prejudicial effects, the appeals court concluded that the defendant had failed to show that the prosecutor's improper comment caused the jury to return a verdict of guilty. *Id.*

Likewise in the instant case, (1) Defendant does not challenge the sufficiency of the evi-

dence against her; (2) the trial court sustained defense counsel's objection to Dankelson's remark and admonished the jury; and (3), as the transcript shows, Dankelson made no further reference to Defendant's prior convictions. Defendant clearly has failed to show that Dankelson's remark caused the jury to convict her.

The principal cases Defendant cites, *Guernsey, supra,* and *State v. Sanders,* 634 S.W.2d 525 (Mo.App.1982), are not persuasive. In *Guernsey,* this Court reversed the conviction of a defendant charged with stealing a motor vehicle because the prosecutor made the following statement to the jury: "[T]here is a certain ring of truth to that 'once a thief, always a thief.' I think you can take that into consideration. If she can shoplift, she can take a car. I think common sense people would take that into consideration." Already in evidence was the defendant's previous conviction for shoplifting.

Key differences distinguish *Guernsey* from the instant case, however. In *Guernsey,* the prosecutor's statements clearly and unambiguously directed the jury to consider defendant's prior conviction as evidence of the mental intent required to prove she stole the motor vehicle in the case at bar. By contrast, Dankelson's statement was equivocal. Arguably, it's only purpose and effect was to impugn Defendant's credibility. In addition, the defense counsel in *Guernsey* failed to object to the prosecutor's statements, and the trial court did not admonish the jury to ignore the statements. Thus, even though the court later instructed the jury in writing that prior convictions were for consideration only on the question of the defendant's credibility, the damage was done. Here, defense counsel objected in peremptory fashion, and the trial court immediately admonished the jury.

*Sanders,* a rape case, is likewise distinguishable. There, while cross-examining the defendant about two previous rape convictions and a previous kidnapping conviction, the prosecutor described those crimes in great detail. Included in the descriptions were the time and place of the incidents, the names of the victims, and the legal elements of each crime the defendant had been .

charged with (e.g., that defendant did "willfully, unlawfully, forcibly and feloniously rape, ravish and carnally know" his earlier victims). When defense counsel objected to this line of questioning, the trial court overruled the objection and the prosecutor continued.

Later, in closing argument, the prosecutor again brought up the defendant's prior convictions. "And, folks," the prosecutor said, "in deciding who to believe, I would remind you that standing behind Susan N___ [the victim in the case at bar] is a girl named Maureen R___ [the victim in an earlier kidnapping and rape conviction] and a girl named Rebecca P___ [the victim in an earlier rape conviction]. They are telling you who to believe." The appeals court found that the prosecutor's remarks went beyond mere impeachment and held that the prejudicial effects of the remarks were not cured by a later instruction that the jury should consider the convictions only in assessing the defendant's credibility. 634 S.W.2d at 528.

Clearly, Dankelson's remark in this case pales when compared to the prejudicial remarks in *Sanders.* Furthermore, whereas the trial court in *Sanders* overruled defense counsel's objection, the trial court in the instant case immediately sustained the objection and straightaway admonished the jury. Thus, *Sanders* provides no basis for reversal.

In light of the foregoing analysis, we hold that the trial court did not abuse its discretion by refusing to declare a mistrial.

### Reasonable Doubt Instruction

Defendant's second point is that the trial court erred in giving Instruction No. 4, based on MAI–CR 3d 302.04, in that the instruction erroneously defined "reasonable doubt." In *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992), the court rejected the same contention and said the instruction has been repeatedly upheld. Defendant's second point has no merit.

The judgment is affirmed.

PARRISH, C.J., and SHRUM, J., concur.