STATE of Missouri, Plaintiff–Respondent,

v.

Scott Elliott HOPE, Defendant–Appellant.

Scott Elliott HOPE, Movant–Appellant,

v.

STATE of Missouri, Respondent–Respondent.

Nos. 19850, 21138.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 24, 1997.

Motion for Rehearing or Transfer
Denied Oct. 16, 1997.

Application to Transfer Denied
Nov. 25, 1997.

Kent E. Gipson, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Joiner, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Judge.

A jury convicted Scott Hope (Defendant) of second-degree murder, § 565.021.1(2), and armed criminal action, § 571.015, for the fatal shooting of a gas station attendant during a robbery.[1] Defendant was sentenced to life imprisonment on the charge of second-degree murder and a consecutive 200–year sentence on the armed criminal action charge. Defendant appeals these convictions in No. 19850.

Scott Hope (Movant) also filed a motion pursuant to Rule 29.15 claiming, among other things, ineffective assistance of counsel. A hearing was held on the motion. The motion court found that Movant's trial counsel was not ineffective and denied the motion. Movant appeals the decision of the motion court in No. 21138.[2]

### FACTS

Defendant does not challenge the sufficiency of the evidence.

On August 5, 1993, Defendant and Tim Crosby entered the Clark Super 100 gas station at 1122 West Sunshine in Springfield, Missouri, wearing bandanas to cover their faces. The station's security camera captured their entry on video tape. Defendant carried a .22 caliber pistol. Defendant and Crosby robbed the station. The attendant, Francis "Pat" Patrick, was compelled to lie face down in the back room of the station. After Crosby had taken Patrick's wallet, Defendant shot Patrick in the back at close range. Patrick died as a result of this gunshot wound.

Defendant was arrested at the home of Glenna Presley where he was living. The police searched Presley's house and automobile. During this search, the police recovered the murder weapon and ammunition. Defendant was then taken to the police station where he was questioned in a videotaped interrogation. After being informed of his *Miranda* rights and signing a waiver of those rights, Defendant told police that he was at home at the time of the robbery and murder. He also denied knowing Crosby.

A grand jury indicted Defendant on charges of second-degree murder and armed criminal action. At trial, Defendant's brother testified that he saw Defendant the day before the murder in possession of a pistol. He described that pistol as having a handle similar to that of the murder weapon. The State showed the jury the video taken by the station's security camera. Crosby took the stand against Defendant testifying that Defendant shot Patrick. The State's ballistics expert testified that the .22 caliber pistol seized from Presley's home (where Defendant had been living) was the murder weapon. The ballistics expert also matched the slug retrieved from Patrick's body with ammunition seized from Presley's automobile (which Defendant had been driving).

The defense cross-examined Defendant's brother regarding the tense relationship between Defendant and him. The defense also extensively cross-examined Crosby concentrating on his plea arrangement with the State. Defendant took the stand in his own defense. He claimed that at the time the robbery and murder took place, he was waiting in a parking lot for Crosby and Rick Rogers to return from making a drug deal.

The jury convicted Defendant of second-degree murder and armed criminal action. Defendant was found to be a prior and persistent offender. He was sentenced to consecutive sentences of life in prison and 200 years. Appeal No. 19850 followed.

Scott Hope (Movant) filed a 29.15 motion charging, among other things, ineffective assistance of trial counsel. At the hearing, the

---

1. Statutory references are to RSMo 1994 unless otherwise stated.

2. Defendant was sentenced before January 1, 1996, and his Rule 29.15 motion was filed June 26, 1995; consequently, Defendant's post-conviction motion is governed by Rule 29.15 (1995). Rule 29.15(*l*) (1995) mandated consolidation of the two appeals.

motion court heard Movant's testimony and the testimony of his girlfriend. The State presented the testimony of Movant's trial counsel, Elizabeth Bock, and investigator J.D. Herring. The motion court denied Movant's 29.15 motion. Appeal No. 21138 followed.

### DIRECT APPEAL—No. 19850

*Point I: Remarks Made By Trial Judge*

Defendant's first point involves remarks made by the trial judge in the presence of the jury. Defendant admits in his brief that this point has not been preserved. Thus, we review for plain error.

■ Under plain error review a Defendant bears the burden of showing that the trial court's action was not only erroneous, but that the error so substantially affected his or her rights that a manifest injustice or miscarriage of justice will result if the error is not corrected. *State v. Bransford,* 920 S.W.2d 937, 942[3] (Mo.App.1996).

■ In this case, an alternate juror asked the trial court if juror note taking would be allowed. The trial judge's response included the following:

"We have considered the issue of note taking and I have decided in this case to take the more conservative approach and not allow note taking because I didn't want to insert an issue in the case that might be grounds for the Court of Appeals overturning the case for that reason alone."

Defendant argues that this remark tended to suggest that the trial judge believed Defendant was guilty. He contends that the remark was so prejudicial that it should be considered plain error. We disagree.

Defendant relies heavily on *State v. Castino,* 264 S.W.2d 372 (Mo.1954) and *State v. Dixon,* 463 S.W.2d 783 (Mo.1971) to support his argument that the trial judge's remarks rise to the level of plain error. We note that *Castino* is easily distinguished from this case because *Castino* does not involve plain error review. *Dixon,* however, does involve plain error review. Yet, *Dixon* can be distinguished from this case. The *Dixon* opinion says that "[i]dentification of appellant and his

connection with the crime were in sharp dispute." 463 S.W.2d at 785. In addition, the court in *Dixon* notes that the defendant there had evidence of an alibi from "substantial citizens." *Id.* In addition, the nature of the remarks described in both *Castino* and *Dixon* are more prejudicial than the remarks here.

Defendant does not establish that the remarks of the trial judge rose to a level that prejudiced the minds of the jury so as to deprive him of a fair and impartial trial. *State v. Fleer,* 851 S.W.2d 582, 593[14] (Mo.App.1993). Furthermore, we do not find these remarks plain error in the face of very strong evidence indicating Defendant's guilt. *See State v. Sumlin,* 915 S.W.2d 366, 370 (Mo.App.1996). The jury heard evidence from a witness who was present when Defendant shot the victim. The murder weapon was found in the house where Defendant lived. A witness testified that Defendant had a pistol with characteristics matching the murder weapon the day before the murder. The slug taken from the victim's body matched ammunition found in an automobile Defendant had been driving.

Given the presence of this and other evidence of Defendant's guilt, there is not in this case a strong, clear demonstration of manifest injustice or miscarriage of justice stemming from the trial judge's remarks. *See State v. Varvera,* 897 S.W.2d 198, 201 (Mo.App.1995). Even if the trial judge's remarks were improper—an issue we need not decide—we are not persuaded that they so substantially affected Defendant's rights that a manifest injustice or miscarriage of justice inexorably results if left uncorrected. *Id.* at 201[6]. Point I is denied.

*Point V: Remarks Made By Prosecutor*

■ Defendant's fifth point contends that the trial court erred in overruling defense objections to remarks made by the prosecutor in the rebuttal portion of the State's closing argument. Defendant argues that these remarks improperly vouched for the credibility of State's witness Crosby, injecting the prosecutor's personal beliefs and credibility into the case. We recount the prosecutor's statements:

"I am responsible for that plea agreement with Tim Crosby. I put my name to it."

[Defense Counsel] "Objection. . . ."

Defense counsel's timely objection to the argument was based on the grounds that the prosecutor injected his personal beliefs and "did something because he had knowledge outside the scope of this case." While arguing the objection, the prosecutor revealed the extent of the argument that he was going to make. The trial court overruled the objection. The prosecutor went on:

"You might not like that plea agreement. You might not like what we did. But, ladies and gentlemen, if you do not like it, you blame us. You blame us and you hold us responsible for that if you don't like it. And that's something that's going to happen."

"But what you do not do, what you do not do is you let a killer go because you don't like something we did. That's two different issues. The defense has tried to weave them around to the one, but it's two different issues. So, keep them separated. What you might not like about [it] is one thing, but you do not let that killer go because of it."

■■■ A trial court has broad discretion in its control of closing arguments allowing counsel wide latitude in making a summation. *State v. Nolen,* 872 S.W.2d 660, 662[5] (Mo.App.1994). Even if an abuse of discretion is shown, a defendant must prove that the abuse prejudiced his or her case, i.e., there was a reasonable probability that, absent the abuse, the verdict would have been different. *State v. Barton,* 936 S.W.2d 781, 786 (Mo. banc 1996).

Here, the prosecutor's remarks could have been seen as an injection of his personal beliefs based on facts not in the record. *See State v. Whitfield,* 837 S.W.2d 503, 511 (Mo. banc 1992); *State v. Roberts,* 838 S.W.2d 126, 129–30 (Mo.App.1992). However, this line of the prosecutor's summation occurred during the State's rebuttal. Defendant attacked Crosby's credibility in his closing argument. The State was entitled to a little more latitude to respond to Defendant's closing argument. *See State v. Mease,* 842 S.W.2d 98,

109 (Mo.banc 1992); *State v. Hill,* 808 S.W.2d 882, 887 (Mo.App.1991).

In addition, Defendant has not shown how these remarks prejudiced him. Granted, the prosecutor's remarks concerned the witness who testified that Defendant shot the victim. Yet, Crosby's testimony was not the only evidence before the jury that tied Defendant to the murder. Again, Defendant's brother testified that he saw the handle of a pistol carried by Defendant that matched the handle of the murder weapon. Ammunition matching the type used in the murder was found in the car Defendant was driving. The murder weapon was found in the house where Defendant was living. The station's video tape showed that the person entering the store with Crosby had the murder weapon. These facts, coupled with Crosby's testimony, constituted very strong evidence of Defendant's guilt.

■■■ We find that the prosecutor's calling Defendant a "killer" was supported by the evidence. *See State v. Harris,* 824 S.W.2d 111, 115[8] (Mo.App.1992). "The prosecutor has a right to draw any inference from the evidence that he believes in good faith to be justified." *Id.* at 115[7]. In light of Crosby's testimony that he was present when Defendant shot the victim, the prosecutor could properly draw on the inference of that witness and other evidence that Defendant was a killer.

Considering the strong evidence pointing to Defendant's guilt, we cannot say that the prosecutor's remarks during closing argument prejudiced Defendant. Point V is denied.

*Point VI: Grand Jury Transcript*

Defendant's Point VI declares:

"The Presiding Judge of the Circuit Court of Greene County erred in failing to order that the grand jury proceedings that resulted in [Defendant's] indictment be transcribed pursuant to section 540.105 R.S.Mo. which denied [Defendant] his right to due process, equal protection of the law, and to confront and cross examine his accusers as guaranteed by the Sixth and Fourteenth Amendments of the Unit-

ed States Constitution and Article I, Section 10 and 18(a) of the Missouri Constitution."

This point presents nothing for review.

■ Defendant filed a Motion to Dismiss Indictment Or In The Alternative For A Bill of Particulars claiming that his due process rights were violated by his inability to obtain a transcript of the pertinent grand jury proceedings. The court overruled this motion. Defendant also filed a motion to compel the prosecutor to produce a transcript of the grand jury proceedings. The trial court granted this motion. The prosecutor responded that the proceedings involving this case were not recorded and there were no transcripts made of the proceedings involving this case. Defendant raised the lack of a transcript in his motion for new trial.

■ However, on appeal, Defendant does not challenge an appealable judgment or order. From the record, we find the "Presiding Judge of the Circuit Court of Greene County" has taken no action that can be seen as final judgment to effect an appeal under § 547.070. "There is no right to appeal without statutory authority." *State v. Williams*, 871 S.W.2d 450, 452[1] (Mo.banc 1994). Defendant points to no statutory authority allowing this appeal. Our research reveals no authority. Thus, we decline to review this point.[3]

*Point VII: Motion To Suppress*

■ In his seventh point, Defendant contends that the trial court erred in denying Defendant's motion to suppress statements made to the police and admitting these statements over objection. Defendant complains that these statements were "involuntarily made, and obtained without a knowing and intelligent waiver" of his *Miranda* rights. Defendant also claims that these statements

were hearsay and should not have been admitted at trial.

After Defendant was arrested, he was taken to the police station and questioned. Before the interrogation, Defendant was given the "*Miranda* warning" and signed a waiver.[4] Police testimony showed that an officer went through each part of the *Miranda* warning with Defendant before Defendant signed the waiver.

Defendant advances the argument that police silence regarding the nature of the crime for which he was arrested made his statements involuntary. He says that after it became clear he was being questioned about the robbery-homicide, he requested counsel. Defendant also points out that he did not know that the interrogation was being video taped.

■ To decide whether a *Miranda* waiver is voluntary, a reviewing court must examine the totality of the circumstances. *State v. Banks*, 922 S.W.2d 32, 39 (Mo.App.1996). Examining all of the circumstances, the record is clear that Defendant understood his rights according to *Miranda* and effectively waived those rights.

First, Defendant said that he understood his rights. Defendant indicated that he had been arrested before and understood his rights in previous arrests. *See State v. Harrington*, 756 S.W.2d 647, 650[2] (Mo.App. 1988). Finally, Defendant understood his rights well enough to assert the right to counsel during the interrogation.

■ We specifically reject Defendant's notion that his waiver was not voluntary because he did not know the reason he was being interrogated. The *Miranda* warning serves to insure that a defendant understands that he or she "may choose not to talk to law enforcement officers, to talk only with counsel present, or to cease talking any

---

3. Even if Defendant had presented a reviewable point, Missouri law does not require the transcription of grand jury proceedings. *See State v. Greer*, 605 S.W.2d 93, 95 (Mo.1980), *vacated on other grounds,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981); *State v. Thomas,* 674 S.W.2d 131, 134 (Mo.App.1984); *State v. Garcia,* 682 S.W.2d 12, 15 (Mo.App.1984).

4. In *Miranda v. Arizona,* the Court set out what has become known as "the *Miranda* warning" as a means of satisfying the "procedural safeguards" required to protect an individual's privilege against self-incrimination. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630[66, 67], 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

**544**

time." *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). An individual's knowledge of the crime for which he or she is arrested has no bearing on whether the individual understands his or her rights under *Miranda.*

Justice Powell directly addressed this point in *Spring:*

"This Court has never held that mere silence by law enforcement officials as to the subject matter of an interrogation is 'trickery' sufficient to invalidate a suspect's waiver of *Miranda* rights, and we expressly decline so to hold today.

Once *Miranda* warnings are given, it is difficult to see how official silence could cause a suspect to misunderstand the nature of his constitutional right—'his right to refuse to answer any question which might incriminate him.'" (citations omitted).

479 U.S. at 576, 107 S.Ct. at 859.

Also, the fact that Defendant did not know he was being video taped has no bearing on the voluntariness of his *Miranda* waiver. Defendant never advances an argument explaining why video taping would make his waiver involuntary. The record reflects that after being told that anything he said could be used against him in court, he waived his rights and talked to officers who could testify in court about his statements.

The final part of Defendant's seventh point contends that statements made by Defendant during the interrogation were hearsay, did not fall under the hearsay exception for admissions, and should not have been admitted at trial. While this issue would be properly preserved for review, Defendant does not cite any authority supporting the proposition that these statements were not admissions. Points relied on, or contentions therein, that are not supported by authority can be considered abandoned. *See Freeman v. State,* 765 S.W.2d 334, 335[1] (Mo.App.1989); *State v. Stokes,* 739 S.W.2d 560, 561[2] (Mo.App.1987). In recognition of the efforts expended by Defendant's trial counsel to preserve this issue, we will review it for plain error.

While being questioned, Defendant stated that he was home at the time the robbery took place and that he did not know Tim Crosby. These statements were properly received as admissions.

An admission is a statement that tends to incriminate an individual, to connect an individual to a crime, or to manifest a consciousness of guilt. *State v. Isa,* 850 S.W.2d 876, 894[39] (Mo.banc 1993). "A false denial can constitute an admission as well as manifest a consciousness of guilt." *Id.* at 894[42]. Both statements made by Defendant manifest a consciousness of guilt and, "a desire to conceal the offense or a role therein." *Id.* at 894[43]. We find no plain error in admitting these statements.

Defendant's seventh point is denied.

*Point VIII: Reasonable Doubt Instruction*

In his final point, Defendant claims the trial court erred when it overruled his motion to modify the reasonable doubt instruction patterned after MAI–CR3d 302.04. This pattern instruction defines "proof beyond a reasonable doubt" as "proof that leaves you firmly convinced of the defendant's guilt." Defendant contends the definition allowed the jury to convict him based on a degree of proof that was below that required by the due process clause.

The Missouri Supreme Court has held that the "firmly convinced" language does not lower the proof required of the state in criminal cases to something less than "proof beyond a reasonable doubt." *State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo.banc 1987). In *State v. Griffin,* 848 S.W.2d 464, 469[8] (Mo. banc 1993), the court reaffirmed its holding in *Antwine* after consideration of *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), relied on here by Defendant. Point VIII is denied.

APPEAL No. 21138

*Points II and III: Ballistics Expert*

Both Movant's second and third points center upon the failure to call a ballistics expert. Point II contends that the motion court erred in not finding that trial counsel was ineffective because she failed to call a

ballistics expert. Point III asserts that the motion court erred when it failed to find that Movant was abandoned by post-conviction motion counsel because he failed to call a ballistics expert.

In Point II, Movant admits that he cannot show prejudice as required under the test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Without a showing of prejudice, his claim fails. Point II is denied.

■ In Point III, Movant argues that he was abandoned by his motion counsel because that counsel failed to call a ballistics expert at the motion hearing to establish prejudice resulting from trial counsel's failure to call a ballistics expert. However, claims of abandonment involve untimely filings of amended post-conviction motions by motion counsel. *See Luleff v. State,* 807 S.W.2d 495 (Mo.banc 1991); *Bullard v. State,* 853 S.W.2d 921, 922[1] (Mo.banc 1993). · Missouri courts do not recognize a claim of ineffective assistance of a post-conviction counsel. *State v. Nolin,* 833 S.W.2d 456, 460[5] (Mo.App.1992). This court will not broaden the scope of the abandonment concept to include perceived ineffectiveness of motion counsel. Point III is denied.

*Point IV: Fingerprints*

■ Movant's final point on his post-conviction appeal complains that the motion court erred in its finding that trial counsel was not ineffective due to counsel's failure to present evidence and argue to the jury that Movant's fingerprints were not found on the murder weapon. In this point, Movant claims he meets both prongs of the *Strickland* test: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the movant was prejudiced by the representation. 466 U.S. at 687–688, 104 S.Ct. at 2064–65.

■ In reviewing the denial of post-conviction relief under Rule 29.15 we are limited to deciding whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Ervin,* 835 S.W.2d 905, 928 (Mo.banc 1992). The motion court's findings state the following:

"The Court finds that trial counsel was not ineffective in failing to elicit testimony that Movant's fingerprints were not on the murder weapon. Movant presented no evidence to show that the State conducted a fingerprint examination on the weapon. Trial counsel testified, and the record reflects, that there was no fingerprint evidence. This Court therefore finds that Movant's allegations in this regard are speculative and conclusionary, and the Movant suffered no prejudice."

The trial court's conclusions of law assert that "conclusory speculations" are not substantial evidence that a trial counsel was ineffective. *State v. Hamilton,* 817 S.W.2d 8, 12[15] (Mo.App.1991). We find no clear error by the motion court.

The record reveals that the state adduced no evidence regarding fingerprint evidence at trial. Movant argues that trial counsel should have cross-examined witnesses for the State to elicit statements showing the absence of Movant's fingerprints citing *State v. Hall,* 687 S.W.2d 924, 928 (Mo.App.1985). However, *Hall* simply says that it was "in order" for a Movant to crossexamine state's witnesses to show the absence of fingerprints or fingerprint testing. *Id. Hall* does not say that it is prejudicial not to adduce such testimony.

Movant asserts in the most conclusory fashion that the lack of his fingerprints was "crucial" exculpatory evidence, and had such evidence been adduced, there is a reasonable probability that the outcome of the trial would have been different thereby satisfying prejudice under *Strickland.* 466 U.S. at 694, 104 S.Ct. at 2068. Movant, however, misses the point that fingerprints were never mentioned to the jury. We cannot say that evidence establishing the absence of fingerprints would have affected the outcome of the trial when the jury found Movant guilty without the benefit of fingerprint evidence.

■ Furthermore, the contention in Movant's point that trial counsel was ineffective in not arguing the absence of fingerprints is unsupported by the law. Movant does not direct our attention to evidence in either case that tends to show the police ever

tested the weapon for fingerprints. The State is neither required to take fingerprints from objects allegedly touched by a defendant, nor required to account for the absence of fingerprints. *State v. Holmes,* 389 S.W.2d 30, 34[4] (Mo.1965); *State v. Schneider,* 736 S.W.2d 392, 402 (Mo.banc 1987). In closing arguments, a defense attorney cannot draw an adverse inference from the failure of the State to take fingerprints. *Schneider,* 736 S.W.2d at 402; *State v. Beck,* 785 S.W.2d 714, 720[13] (Mo.App.1990). If the results of fingerprint tests are not placed in evidence, a defense counsel would be arguing matters not in evidence if he or she argued the absence of fingerprints from a murder weapon. *See State v. McKinney,* 554 S.W.2d 488, 490 (Mo.App.1977).

Trial counsel's failure to elicit testimony on cross-examination regarding fingerprints was not prejudicial. Trial counsel's failure to argue the absence of fingerprints was proper. Point IV is denied.

In No. 19850, we affirm the judgment of conviction for second-degree murder and armed criminal action. The judgment in No. 21138 denying Movant's motion for post-conviction relief is affirmed.

PARRISH, P.J., and BARNEY, J., concur.