**STATE of Missouri, Respondent,**

v.

**Moses YOUNG, Appellant.**

**No. 66167.**

Supreme Court of Missouri,
En Banc.

Dec. 17, 1985.

Rehearing Denied Jan. 15, 1986.

Dave Hemingway, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Victorine R. Mahon, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

Appellant, Moses Young, Jr., was convicted on three counts of capital murder by a jury in the Circuit Court of the City of St. Louis and was sentenced to death. Following rendition of judgment and imposition of sentences, an appeal was perfected to this Court. This Court has exclusive jurisdiction under Mo. Const. art. V, § 3.

At 9:00 a.m. on February 8, 1983, Lee Rascover opened his pawn shop on Martin Luther King Drive, St. Louis, and admitted appellant who had been waiting in front of the store. Appellant attempted to pawn a gold plated stickpin. Rascover told appellant it was worthless and threatened to have appellant arrested for attempting to steal by deceit. A heated exchange ensued during which appellant attempted to push Rascover, who pushed appellant back and drew his gun from a hip holster and ordered appellant to leave. Appellant eventually left.

Thereafter, Rascover telephoned his pawn shop on Natural Bridge Road, St. Louis, and told Ronnell Bennett, one of his partners, that appellant was bringing the pin there and informed Bennett of the earlier altercation. Appellant arrived at the second shop and attempted to get several thousand dollars for the pin, which attempt was rebuffed by Bennett. At this point appellant engaged in an argument with James Schneider, another of the partners. Bennett suggested that appellant bring something else to pawn. Eventually, they agreed that appellant might have some success trying to pawn guns or rifles. Appellant then left after attempting to take some jewelry which he had asked to examine. His attempt was resisted and he left.

Sometime later, appellant returned to the Natural Bridge Road shop carrying a rifle. At the time four persons were present, Bennett, Sol Marks, who was Rascover's grandfather, Kent Bicknese, a billboard salesman, and James Schneider. Bennett saw appellant as he entered the store, apparently sensed danger, and sent the 80-year-old Marks to the back of the store.

About this time, appellant raised the rifle, said "Here, Rock [Bennett's nickname], I brought this for you," and fired in the direction of Bennett. The shot killed Bicknese, who was standing directly in front of Bennett. At that moment, Schneider emerged from the office and appellant turned and killed him.

Bennett retreated with Sol Marks to the back of the store. Marks hesitated and fell from Bennett's arms. Bennett left him and escaped to the basement where he hid in the vault. While in the basement, Bennett tripped an alarm. Bennett testified that, while he was in the basement, he heard appellant ask Marks "Where did he go?" Bennett then heard two more shots. Ben-

nett also testified that he heard appellant start down the basement steps and yell "Where are you?"

Bennett remained in the vault until he heard police radios sometime later. The police found three bodies (Bicknese, Schneider, and Marks): two in the main lobby and one in the hallway leading to the rear of the building. They also found that the top of the jewelry counter had been smashed and almost all the jewelry was missing. Bennett stated that some $576 was missing from the cash register and an examination revealed that the victims' billfolds were also gone.

■ Appellant first contends that the trial court abused its discretion when it failed to strike for cause veniremember Debra Williford, who testified at voir dire that her brother had been murdered a year-and-a-half earlier. Our standard of review precludes interference with the trial court's discretion unless there is a clear showing of abuse and a real possibility of injury to the complaining party. *State v. Betts*, 646 S.W.2d 94, 98 (Mo. banc 1983); *State v. Pennington*, 642 S.W.2d 646, 649 (Mo. banc 1982). "Abuse" exists when "reasonable men could not differ as to the propriety of the action taken by the trial court." *State v. Light*, 686 S.W.2d 538, 541 (Mo.App. 1985).

■ After voir dire of Ms. Williford, wherein she repeated numerous times that she "would not ignore her duty as a juror," the trial court concluded:

I'm not going to excuse her. This lady is a teacher * * *. It's my opinion based on her demeanor, the * * * consideration, that she gave to the questions, the time that she took to respond to them, the manner in which she responded that she can be a fair and impartial juror.

We have read the transcript of the voir dire of Ms. Williford and it supports the finding of the trial court. The contention is without merit.

Appellant next contends that the trial court erred in allowing the State to "death qualify" the jury panel, because "death qualification" tends to create conviction-prone juries. Appellant cites *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir.1985). This Court has expressly declined to follow *Grigsby. See State v. Nave*, 694 S.W.2d 729 (Mo. banc 1985); *State v. Malone*, 694 S.W.2d 723 (Mo. banc 1985).

■ Appellant next contends the trial court erred in striking for cause a veniremember Hosea Harville, whose responses, appellant claims, "revealed at most, an equivocal general objection to capital punishment."

The standard of review of this contention was recently stated by the United States Supreme Court in *Wainright v. Witt*, —— U.S. ——, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985):

The standard is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. "[*Adams v. Texas*, 448 U.S. 38, 44, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980) ] * * * [I]n addition to dispensing with *Witherspoon's* reference to automatic decision making, this standard likewise does not require that a juror's bias be proved with "unmistakable clarity."

The transcript reference this contention reads as follows:

MR. ROGERS: But if I can prove it to be serious enough, to you, could you impose the death penalty?

VENIREMAN CARL WILLIAMS: Yes, sir.

MR. ROGERS: Okay. Mr. Harville.

VENIREMAN HARVILLE: It's hard to say about me, I don't—I really don't—you have to really prove it to me.

MR. ROGERS: Well, let's put it like this, are there some cases where you feel that the elements—events are serious enough that the death penalty is merited?

VENIREMAN HARVILLE: I really can't say, I don't—

MR. ROGERS: How do you feel about the death penalty?

VENIREMAN HARVILLE: Personally I really don't like it.

MR. ROGERS: Okay. You don't like it to the extent that you could never impose it on somebody else?

VENIREMAN HARVILLE: I probably couldn't.

MR. ROGERS: Okay. You understand that we need to know now, because once the starts—case starts, it's too late to find out.

VENIREMAN HARVILLE: I probably couldn't impose a death penalty on nobody.

MR. ROGERS: No matter what the circumstances?

VENIREMAN HARVILLE: I don't think I * * * really can impose the death penalty on nobody. * * *

THE COURT: I want to ask a question of Mr. Harville, I understood you to say that you didn't like it and you probably couldn't impose it?

VENIREMAN HARVILLE: Uh-huh.

THE COURT: Now, what I want to know is the question, I don't know that Mr. Rogers phrased it to you this way and if he did, I'm sorry, if I'm repeating it, are there any circumstances that you could conceive of that you would be willing to impose the death penalty?

VENIREMAN HARVILLE: It's hard to say that, I never really thought about it.

THE COURT: I know it's hard to say, but you have to say it.

VENIREMAN HARVILLE: I probably couldn't.

THE COURT: Well, don't tell me whether you probably could or probably couldn't, tell me whether you could or couldn't.

VENIREMAN HARVILLE: I couldn't.

THE COURT: Could not sir?

VENIREMAN HARVILLE: Could not.

THE COURT: Now, you're sure about that?

VENIREMAN HARVILLE: Positive.

THE COURT: All right.

We apply the *Wainwright* standard and conclude the contention is without merit.

Appellant next contends that the trial court abused its discretion in failing to rule on a motion requesting funds to hire a pathologist to refute the State's evidence that Sol Marks was alive when he was shot. This issue arises from the testimony of Ronnell Bennett that, as he and Marks were escaping to the back of the store, Marks "apparently had a heart attack or passed out and fell" from Bennett's arms. Appellant's theory is apparently that Marks died of a heart attack before he received otherwise fatal gunshot wounds.

The State's evidence on this point came in the testimony of Dr. Michael Graham, the pathologist who performed the autopsy on Sol Marks. Dr. Graham testified that Marks was alive when he sustained the gunshot wounds and that each wound was sufficient in itself to cause death. The basis of Dr. Graham's opinion was his finding of a large hemorrhage associated with the wounds. He indicated that had Marks already been dead, there would not have been any significant bleeding.

In *State v. Williams*, 603 S.W.2d 562, 560 (Mo.1980), this Court held that "in the absence of statutory authorization, the accused in a criminal case is not entitled to have his expert witnesses summoned at public expense." The State is not constitutionally mandated to provide the accused with such services. *Id.; see also, State v. Holland*, 653 S.W.2d 670, 678 (Mo. banc 1983). "Whether to provide public funds to aid an accused in the preparation of his defense is within the discretion of the trial court." *Holland, supra.*

There is no statute authorizing the expenditure of public funds for appellant to retain a pathologist to refute the State's case. Nevertheless, appellant urges this Court to adopt the standard used in *Williams v. Martin*, 618 F.2d 1021 (4th Cir. 1980). We consider the *Martin* standard without adopting it, only to demonstrate

that in no circumstance should appellant prevail on this point.

The *Martin* standard requires public funding of a criminal defendant's expert "when a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Martin, supra,* at 1026.

The record does not raise a "substantial question" as to whether Sol Marks was dead before appellant shot him. Not only did Dr. Graham testify that Marks was alive, but he disclosed his basis for that conclusion. There is also the testimony of Ronnell Bennett that he heard appellant ask Marks where Bennett was before he heard shots. The contention is without merit.

■ Appellant next contends the trial court erred in not declaring a mistrial during cross-examination.

As part of his defense, appellant took the stand and submitted himself to cross-examination by the prosecution. Shortly after the prosecutor began cross-examination, the following colloquy occurred:

"Q. (by MR. ROGERS) Mr. Young, how many people have you shot?

"A. Have I shot?

"Q. Yeah, how many?"

At this point, appellant's counsel asked to approach the bench, objected to the question and requested a mistrial. The trial court sustained the objection, but denied the mistrial.

The rule is long-standing that "[t]he declaration of a mistrial is a drastic remedy, and the power of the trial court in this respect 'should be exercised only in extraordinary circumstances.'" *State v. Camper,* 391 S.W.2d 926, 927–28 (Mo.1965). Because the trial court "has observed the incident giving rise to the request for a mistrial, and * * * is in a better position than an appellate court to evaluate [its] prejudicial effect * * *." *Camper, supra,* this Court's review extends only to determining whether "as a matter of law, the trial court abused its discretion in refusing

to declare a mistrial." *Id., see also State v. Harris,* 547 S.W.2d 473, 475 (Mo. banc 1977), *State v. Lee,* 654 S.W.2d 876, 879 (Mo. banc 1983).

Much of appellant's argument on this point centers on the prosecutor's demeanor and tone when asking the above question. We are unable to evaluate these contentions and therefore defer to the conclusion reached by the trial court.

In further support of his point, appellant relies on *State v. Dunn,* 577 S.W.2d 649 (Mo. banc 1979) for the proposition that the conduct here at issue was prejudicial and irremediable (except by mistrial) as a matter of law. In *Dunn,* this Court held that cross-examination of a criminal defendant may not include purely collateral inquiries into alleged prior acts of misconduct going to general credibility. The Court reasoned as follows:

> Cross-examining a defendant as to alleged prior acts of misconduct, particularly where details are stated and the acts are somewhat similar to the case on trial, * * * lends itself to the creation of substantial prejudice even though the answers are in the negative.

*Dunn, supra,* at 653. Because of this "substantial prejudice," appellant contends the prosecutor's questions required a mistrial as a matter of law.

We cannot agree. This case is distinguishable. First, *Dunn* predicated reversible error on the trial court's refusal to exclude the line of questioning objected to. Here, the trial court *sustained* appellant's objection to the question. Second, the improper questioning in *Dunn* was significantly different from the questions here at issue. In *Dunn,* the prosecution referred to a specific date and place. The same level of detail was not present here. The contention is without merit.

Appellant next contends that the trial court erred in permitting certain parts of the prosecution's closing argument in the guilt stage, which appellant asserts incited the passions of the jury. There are two distinct areas of objection. The first in-

volves portions of the prosecution's initial summation in conjunction with graphic photographic exhibits of the victims. The second involves the prosecution's response in rebuttal argument to appellant's counsel's argument that the State's use of the photos was intended to inflame the passions of the jury.

■ Two photographs of victims were used by the prosecution during final argument. The first was Exhibit Number 29 which shows Sol Marks' body in the hallway, with blood and brain matter splattered on the wall and floor. The second was Exhibit Number 38, which shows a large gash-like wound on the right side of Kent Bicknese's head. The prosecuting attorney referred to these exhibits in an effort to show deliberation on the part of appellant. In the context of the entire argument the exhibits were not used in an inflamatory fashion.

■ Nonetheless, during argument, appellant's counsel charged that "the State passed * * * photo after photo after photo of the same bodies. And * * * the only reason for that was to get [the jury] upset, to inflame [the jury's] passions * * *." Defense counsel also charged that police investigating the case had planted evidence and engaged in other improprieties.

On rebuttal, the prosecuting attorney responded to the charges of impropriety as follows:

Believe me, I'm just as hot as you all are sitting there, worse probably. Mr. Walsh, among other things, said that I'm trying to inflame your passions. And quite frankly I do. I really do want to inflame you about this case. I want you to be absolutely outraged at the conduct that occurred here.

Now, that doesn't mean you don't do your job but I really want you to know that you're doing the right thing when you convict this man. I want you to be absolutely incensed about what happened in that pawnshop. I'm a little incensed myself about other things that were said and I'm going to mention them briefly because it sounds to me like what Mr.

Walsh just said was that from the time I took this case over, February, 8th that myself, the police, the photographer * *, Ronell Bennett, Elijah Barnes and Bobby Jackson, we all got together and made this case up. * * *

At this point appellant's counsel objected and urged the court to grant a mistrial because of "the personalization [of the argument] by the prosecutor * * *." The trial judge declined to order a mistrial stating, "Whatever has been said by Mr. Rogers about his own involvement as referred to by Mr. Walsh does not rise to the level of mistrial consideration * * *."

The trial court's rulings on such matters lie within the exercise of sound discretion. The point is without merit.

Appellant next raises three objections to the prosecutor's argument at the close of the punishment stage:

(a) he personalized the argument;

(b) he claimed "that this record presents the strongest case known to the Prosecutor to warrant the death penalty;" and

(c) he claimed "that a life sentence will result in more killing within the penitentiary."

We note that appellant failed to preserve these issues for review by including them in his motion for new trial. *State v. Kelly*, 539 S.W.2d 106, 113 (Mo. banc 1976). Our review, therefore, is limited to a finding of plain error.

■ The crux of appellant's personalization argument appears to involve the prosecutor's argument that, like killing in war and killing in self-defense, the jury would be justified in imposing death in this case. In our view, the prosecutor merely attempted to reassure the jury of their moral and legal justifications for imposing death. We cannot say that permitting this line of argument resulted in manifest injustice.

We further find no merit in appellant's contention that the prosecutor claimed that this record presents the strongest known case warranting the death penalty. Appel-

lant's argument on this point consists in taking various parts of the prosecutor's argument out of context and describing it as a "symbolic position [supplying] all the implication necessary to inform the jury that in his conclusion this case was the worst he had seen * * *." We are not persuaded that "implications" from "symbolic positions" rise to the level of plain error.

■ Finally, with respect to the prosecutor's argument that the jury consider the threat to the prison community engendered by imposing only a life sentence on appellant, we find that no plain error exists.

■ Appellant next contends the trial court committed plain error in admitting certain testimony by Ronnell Bennett. The court admitted testimony by Ronnell Bennett that it was the habit of Sol Marks to carry one hundred or more dollars on his person "at all times," and that Jim Schneider also carried money. This evidence was taken in conjunction with photos showing that the hip pockets of these victims were empty or ripped off and argued by the prosecution to show deliberation. At trial, appellant objected that Bennett's testimony was irrelevant; however, on this appeal he predicates error on a new theory that it was impermissible lay opinion.

We do not find that the evidence complained of resulted in manifest injustice. The evidence was relevant and, as to its opinion nature, we note that the State established a proper foundation. Bennett testified that he had known Sol Marks some four years and stated affirmatively that he knew how much money Marks generally carried. He further gave affirmative testimony that he knew that Schneider carried money. Bennett was not asked for his opinion, but for his actual knowledge of each victim's habit. The point is without merit.

■ Appellant next contends that the trial court committed plain error in refusing to instruct the jury on the following list of mitigating circumstances:

1. That the defendant was 27 years old at the time of the offense and if you impose a sentence of life in prison, the defendant will not be eligible for probation or parole until he is 78 years old.

2. That the fact that you have found the defendant guilty of capital murder is not an aggravating circumstance.

3. That the defendant is poor and has a public defender.

4. That the defendant is the sole surviving child of elderly ill parents.

5. That the defendant is poorly educated.

6. That the defendant has been a mainstay of support to his mother in caring for his father, a victim of stroke.

7. That the defendant has been in a long-term relationship for eleven years with Linda Brownlee.

8. That the defendant has attended religious services of both the Christian and Muslim faiths while incarcerated in the St. Louis City Jail.

9. That the defendant has been a model prisoner while incarcerated in the St. Louis City Jail.

10. That the defendant is the father of small children.

Appellant also contends he was entitled to an instruction on extreme mental or emotional disturbance.

The trial court gave the following modification of MAI–CR2d 15.44:

### INSTRUCTION NO. ____

If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 27, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of Sol Marks [Kent Bicknese] [James Schneider].

You may also consider any circumstances which you find from the evidence in extenuation or mitigation of punishment.

If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

Note 3 of the Notes on Use to MAI–CR2d 15.44 requires the trial judge to instruct the jury on any "statutory" mitigating circumstance enumerated in §§ 565.-012.1(2) and 565.012.3, RSMo 1978 (repealed, now § 565.032(3), RSMo Cum.Supp. 1984), if there is evidence supporting any such circumstance. Note 4 requires an instruction if the evidence supports any mitigating circumstance "authorized by law." Among those mitigating circumstances "authorized by law" is whether the defendant suffered from a mental disease or defect. Note 4 also states: "The phrase 'authorized by law' does not limit extenuating or mitigating circumstances to those specifically directed to death penalty issues." The Note refers specifically to § 565.006.2 (repealed L. 1983, p. 922, S.B. No. 276), RSMo 1978, which provides for the admissibility of "additional evidence in extenuation, mitigation or aggravation of punishment, including * * * the absence of any * * * prior criminal convictions or pleas."

Appellant argues that the Note requires an instruction on *all* "additional evidence" in extenuation or mitigation of punishment, and is not limited to instructions on the absence of prior criminal convictions or pleas and mental disease or defect.

The term "including" in § 565.006.2 seems to indicate that the section is not exclusive; however, some ambiguity would result if Note 4 were interpreted to completely incorporate § 565.006.2, which involves *admissibility of evidence,* into MAI–CR2d 15.44 which deals with the contents of instructions. Such an interpretation would make instructions on all circumstances supported by the evidence "authorized by law." We decline to so interpret MAI–CR2d 15.44 in light of Note on Use 5, which reads:

The jury may consider extenuating or mitigating circumstances even though not set out as "statutory" mitigating circumstances in Section 565.012.3 and even though not "authorized by law" within the meaning of that phrase discussed in 4 above. However, *no instruction should be given calling the jury's attention to any particular circumstance referred to in general in this paragraph.* (Emphasis added.)

Whatever else "authorized by law" means we need not decide today. We hold on this appeal that the instructions sought by appellant were "particular circumstances," which the jury could have considered, but upon which the jury should not have been instructed.

▆▆ As to appellant's contention that he was entitled to an instruction on extreme mental or emotional disturbance, we find no plain error. Appellant's argument of mental or emotional disturbance relies entirely on anger allegedly engendered by appellant's confrontation with Lee Rascover which occurred quite some time before the shootings. We find no manifest injustice.

Finally, appellant challenges the appropriateness of the imposition of the death penalty. Section 565.014.3, RSMo 1978, (repealed effective October 1, 1984) mandates that this Court review the entire record, transcript and report of the trial judge to consider the punishment as well as any errors raised on appeal to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in section 565.012; and

(3) Whether the sentence of death is excessive or disproportionate to the pen-

alty imposed in similar cases, considering both the crime and the defendant.

Appellant does not challenge the sufficiency of the evidence underlying the jury's finding of statutory aggravating circumstances and our review of the record leads us to conclude that the evidence was sufficient. Appellant does contend that the imposition of death resulted from passion, prejudice or other arbitrary factor citing the trial court's failure to instruct on mitigating circumstances and the allegedly inflamatory argument of the prosecution. Appellant further contends that the death penalty is excessive or disproportionate.

As to whether passion or prejudice influenced the jury's verdict, we find against the appellant. We note that the alleged sources of this prejudice have already been ruled against appellant and the record shows no other source of prejudice.

■ Regarding the proportionality of the death penalty in this case, we consider the penalties imposed in similar cases considering the facts and circumstances of these crimes and this defendant. Appellant cites three cases in support of his contention that the death penalties herein imposed are disproportionate: *State v. Turner*, 623 S.W.2d 4 (Mo. banc 1981), *State v. Mitchell*, 611 S.W.2d 223 (Mo. banc 1981) and *State v. Downs*, 593 S.W.2d 535 (Mo.1980). In all three cases multiple murders occurring in the course of robberies were involved and death was not imposed. However, they are distinguishable. The defendants *Turner* and *Mitchell* were participants in the same robbery of a liquor store. At trial, each accused the other of actually inflicting death. In *Downs* the accused was one of three perpetrators of a robbery of a store. There was evidence at trial that he had done the shooting, but it came from codefendants. The trial judge's comment on the sentence is significant:

> Sentence was very appropriate. If jury had evidence that defendant was gunman from anyone other than a co-defendant, jury would have assessed the death penalty.

In each of the cases cited by appellant doubts as to whether the defendant actually inflicted the deaths could have affected the jury's determination of sentence. No such doubts exist here. Appellant was the only perpetrator of the robbery and there was direct disinterested testimony that appellant inflicted death. In this and other respects this case is similar to *State v. Byrd*, 676 S.W.2d 494 (Mo. banc 1984) (defendant shot four cafeteria workers during a robbery), *State v. Johns*, 679 S.W.2d 253 (Mo. banc 1984) (defendant shot a gas station attendant three times in the head during a robbery), and *State v. McDonald*, 661 S.W.2d 497 (Mo. banc 1983) (defendant shot robbery victim; then after discovering from victim's wallet he was a police officer, defendant returned and shot again).

After examining these cases and giving to each of them the individualized consideration required, we find that they do not point to excessiveness or disproportionality in the sentence in this case.

The judgment is affirmed.

HIGGINS, C.J., BILLINGS, BLACKMAR, WELLIVER and RENDLEN, JJ., and REINHARD, Special Judge, concur.

ROBERTSON, J., not sitting.