**STATE of Missouri, Respondent,**

v.

**Derrick L. WHITE, Appellant.**

**No. WD 49177.**

Missouri Court of Appeals, Western District.

Nov. 14, 1995.

**392**

Rebecca L. Kurz, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J. and ULRICH and LAURA DENVIR STITH, JJ.

ULRICH, Judge.

Derrick White was convicted after a jury trial of Murder in the second degree, section 565.021, RSMo (1986), and armed criminal action, section 571.015, RSMo (1986). He was sentenced to concurrent terms of twenty years imprisonment on each count. He appeals his convictions and sentences claiming the trial court erred in 1) not declaring a mistrial based on the state's use of criminal records of venirepersons in exercising its peremptory challenges; 2) precluding Mr. White from presenting evidence of the victim's reputation for violence; 3) failing to submit Mr. White's proposed self defense instruction A; and 4) in precluding Mr. White from presenting evidence of the victim's previous possession of weapons.

The judgment is affirmed.

Derrick White was charged by indictment with murder in the first degree, Section 565.020.2, RSMo (1986), and armed criminal action, Section 571.015 RSMo (1986). Trial commenced, and following voir dire, the state used two of its peremptory challenges to remove veniremen number 8, Donald Amos, and number 14, Lawrence Anderson. No objection was made to the state's striking Donald Amos, but defendant raised a *Batson* objection to the state's striking Lawrence Anderson. The state argued the peremptory challenge was race-neutral in that both venireman Amos and venireman Anderson were stricken because each had a conviction for assault. The prosecutor learned of the prior convictions by having his investigator "run the panel" to obtain venirepersons' criminal records. The state noted Anderson's demeanor, attitude, and his question of what would happen if he did not return the following day as additional reasons for striking venireman Anderson.

Defense counsel moved for a mistrial due to the State's use of the criminal records of venirepersons Amos and Anderson in exercising peremptory challenges. The motion was denied, and the case proceeded to trial.

On the evening of June 25 and in the early morning of June 26, 1992, two off duty police officers were providing security at KB's Restaurant and Lounge. There were also several other individuals working as security guards at the bar that night. As part of the security procedure, customers are frisked and searched for weapons before they enter the club.

At about 1:00 a.m., as the club closed, the victim, Joe Nichols, was leaving and stopped to speak to a security guard at the front door. The security guard was teasing Mr. Nichols about a promotional t-shirt he had received that night. Mr. Nichols began to dance with the shirt in both hands and sing to two ladies who were also at the club. While Mr. Nichols was at the front door, Mr. White shot him four times with a .38 caliber revolver. The victim fell to the ground and died from the gunshot wounds. Neither the off-duty police officers on the scene nor witnesses observed a weapon on or about the body of the victim. Mr. White ran from the scene, getting into the passenger side of a 1979 Cadillac that had been driven into the parking lot minutes before the shooting.

After being identified by several witnesses as the man who had shot the victim, Mr. White was arrested and informed of his rights on July 2, 1992. At that time he denied having ever been to KB's, knowing Mr. Nichols, or any involvement in the homicide. A second version of the shooting was provided on July 23, 1992, when Mr. White made a statement to the prosecutor in the presence of his counsel. He stated he had been to KB's the night of the shooting and had left. He said he had returned to the club at the request of Tyrone Martin to look for Travis Martin. Before returning to the club to look for Travis Martin, Tyrone Martin gave him a gun. Mr. White said as he approached the front door he saw the victim reveal a gun from under a t-shirt he was carrying. Mr. White responded by shooting the victim repeatedly.

A third version of the shooting was given by Mr. White when he testified in his own defense at trial. Mr. White explained how in December of 1991, Joe Nichols had shot him three times in the stomach as he left a nightclub. On June 25, 1992, while at KB's, Mr. White encountered Mr. Nichols, who threatened to shoot him again. Mr. White immediately left the club, found Tyrone Martin, and asked to be taken home because the person who had shot him was in the bar. However, Tyrone would not leave without his brother Travis, gave Mr. White a gun, and told him to go back into the club to get Travis. Mr. White said as he approached the door, he saw the victim leaving. The victim then removed a t-shirt he was carrying in his hand to reveal a weapon. Upon seeing the gun, Mr. White shot the victim. Mr. White then ran to Tyrone Martin's car, and they drove from the scene.

The jury found Mr. White guilty of the lesser included offense of murder in the second degree and armed criminal action. The court, finding Mr. White to be a prior offender, sentenced him to two concurrent sentences of twenty years.

### I.

■ Mr. White claims as his first point on appeal that the trial court erred in denying his motion for mistrial [1] based on the state's use of criminal records of veniremen in exercising its peremptory challenges. Granting a mistrial is a drastic remedy and should be exercised only in extraordinary circumstances where the prejudice to the defendant cannot be removed any other way. *State v. Danback*, 886 S.W.2d 204, 209 (Mo. App.1994). The trial court's decision not to grant a mistrial is accorded substantial deference due to its superior position in determining the prejudicial effect of error. *Id.* This court reviews the trial court's refusal to declare a mistrial only for abuse of discretion.

---

1. Whether a motion to strike the panel was technically the proper motion was not raised and is not addressed.

**394**

*State v. Young,* 701 S.W.2d 429, 434 (Mo. banc. 1985) cert. denied 476 U.S. 1109, 106 S.Ct. 1959, 90 L.Ed.2d 367 (1986).

■ Missouri courts have consistently held that the State is allowed to use the arrest records of persons who may sit as jurors in a criminal prosecution. *State v. Bulloch,* 826 S.W.2d 83 (Mo.App.1992); *State v. Kalter,* 839 S.W.2d 670, 673 (Mo.App.1992); *State v. McMahan,* 821 S.W.2d 110, 113 (Mo.App. 1991). Mr. White claims the state's use of the criminal records of two veniremen gave the prosecution unfair advantage.

■ The prosecution is not under obligation to disclose information absent a statutory provision making such discovery a matter of right of the defense. *State v. Engel,* 859 S.W.2d 822, 829 (Mo.App.1993). No evidence was presented that Mr. White was prejudiced by the prosecution's not providing him with the arrest records of the two stricken veniremen. No rationale is presented as to why striking a person convicted of assault from the panel results in prejudice or bias against the defendant. *See State v. Parker,* 886 S.W.2d 908, 917 (Mo. banc 1994), cert. denied — U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). The trial court did not abuse its discretion in denying defendant's motion for a mistrial. Point one is denied.

## II.

For Mr. White's second point on appeal he claims error in the trial court's exclusion of testimony regarding the victim's general reputation in the community for violence, the trial court's failure to submit defenses proposed instruction "A" on self defense instead of the self defense instruction given, and exclusion of evidence of prior occasions when the victim possessed a firearm.

### A. Exclusion of Victim's reputation evidence and refusal of modified self defense instruction

■ Where self defense is an issue at trial, the defendant may introduce evidence of the victim's violent and turbulent disposition by using evidence of the victim's reputation in the community for those characteristics. *State v. Sherrill,* 657 S.W.2d 731, 741 (Mo.App.1983). However, for the evidence of the victim's reputation for violence to be admissible, the defendant's knowledge of the victim's reputation must be proved. *State v. Buckles,* 636 S.W.2d 914 (Mo.1982); *State v. Sherrill,* 657 S.W.2d 731, 741 (Mo.App.1983); *State v. Harris,* 781 S.W.2d 137, 145 (Mo. App.1989); *See also State v. Waller,* 816 S.W.2d 212 (Mo. banc 1991). Mr. White did not testify that he was aware of Mr. Nichols general reputation in the community for violence.

■ No evidence being admitted showing the victim's reputation for being violent and turbulent, the court's refusal to give defendant's modified self-defense instruction No. A instead of instruction 5 was not error.[2]

### B. Exclusion of evidence of Mr. Nichols possessing weapons on other occasions.

■ Prior to trial the court sustained the state's motion in limine excluding evidence of specific occasions when Mr. Nichols possessed weapons at KB's lounge. Defense counsel made an offer of proof regarding the testimony of Kevin Sallard which defendant sought to introduce. Mr. Sallard was chief of security at KB's. He would have testified that on several prior occasions he had found the victim in possession of a weapon before entering the club. The trial court is granted great latitude in the admission of evidence, and its decision will not be disturbed on appeal unless it abused its discretion. *Koontz v. Ferber,* 870 S.W.2d 885, 890 (Mo. App.1993).

■ In order to admit prior specific acts of the victim the defendant must show that he was aware of the specific act or acts. *State v. Chambers,* 891 S.W.2d 93, 110 (Mo. banc. 1994); *State v. Waller,* 816 S.W.2d 212,

---

**2.** The only difference between instruction No. 5 given by the court and proffered instruction A was a paragraph inserted into instruction A reading as follows: "Evidence has been introduced that Joe Nichols had a reputation for being vio-

lent and turbulent, and that the defendant was aware of that reputation. You may consider this evidence in determining whether the defendant reasonably believed he was in imminent danger of harm from Joe Nichols."

216 (Mo. banc. 1991). This is the most significant factor in determining admissibility. *Waller* at 216. The incidents must also be of a quality so as to contribute to the defendant's fear of the victim. *Id.* The defendant made no showing that he was aware of the other occasions on which Mr. Nichols was found to have a gun before entering the club.

Mr. White sought to introduce this testimony to rebut the evidence that Mr. Nichols did not have a gun when he was killed. The prior act of possessing a gun is not admissible for the purpose of proving that because he possessed a gun on another occasion, he was likely to have one on the night in question. *State v. Harris,* 870 S.W.2d 798, 810 (Mo. banc. 1994) *cert. denied* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). In fact, the evidence would contradict appellant's argument. The testimony of Mr. Sallard showed that if Mr. Nichols would have taken a gun to the club that night it would have been detected by the search at the door and he would not have been armed upon exiting the club. The trial court should not allow the progress of a criminal trial to become bogged down by evidentiary matters that are of questionable relevance. *State v. Waller,* at 216. The trial court did not abuse its discretion in precluding evidence of Mr. Nichols prior possession of weapons.

Judgment is affirmed.

All concur.