**STATE of Missouri, Respondent,**

v.

**Brian Joseph DORSEY, Appellant.**

No. SC 89833.

Supreme Court of Missouri,
En Banc.

July 16, 2010.

Rehearing Denied Aug. 31, 2010.

Janet M. Thompson, Public Defender's Office, Columbia, for appellant.

Shaun J. Mackelprang, Robert Ahsens, Atty. General's Office, Jefferson City, for respondent.

RICHARD B. TEITELMAN, Judge.

Brian J. Dorsey pleaded guilty to two counts of first-degree murder, section 565.020, RSMo 2000.[1] The jury assessed sentences of death for each murder, and the trial court sentenced Dorsey accordingly. This Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3. The judgment is affirmed.

### FACTS

On December 23, 2006, Brian Dorsey called his cousin, Sarah Bonnie, to borrow money to pay two drug dealers who were in his apartment. Sarah's husband Ben called his friend, Darin Carel, and told him that he needed help getting the people to leave Dorsey's apartment. Sarah and Ben drove to Dorsey's apartment. After the two drug dealers left the apartment, Dorsey went with Sarah and Ben to their home, where they were joined by Carel and several others. Sarah, Ben, Dorsey and Sarah's four-year old niece, Jade, stayed at Sarah and Ben's home.

At some point after Sarah and Ben went to bed, Dorsey took a single-shot shotgun from the garage and fatally shot Sarah in the jaw from a distance of approximately 12 inches. Dorsey emptied the chamber, re-loaded the gun, pressed it against Ben's right ear and shot. Ben died. Dorsey then engaged in sexual intercourse with Sarah's body.

After killing Sarah and Ben, Dorsey took Sarah's social security card from a wallet and scattered the contents of the wallet next to her body. He stole various items of personal property from the home and poured bleach on Sarah's torso, genitals and thighs. Dorsey left the home in Sarah's vehicle, drove to Jefferson City and met with a woman from whom he had borrowed money to buy drugs. Dorsey tried to pay the woman with items later determined to belong to Sarah and Ben.

On the afternoon of December 24, Sarah's parents went to check on Sarah and Ben because they did not show up for a family gathering. They went inside and found four-year-old Jade sitting on the couch watching television. Jade told her grandparents that she had tried to awaken Sarah all morning but "she won't wake up." Sarah's parents called for Sarah and knocked on the bedroom door. There was no response. The door was locked, so Sarah's father forced the door open. He saw Sarah and Ben on the bed. After Sarah's father confirmed that Sarah and Ben were dead, he left the home with Jade and Sarah's mother and contacted the police.

The ensuing investigation confirmed that Sarah and Ben both died from single gunshot wounds to the head. Police discovered the "pour marks" over Sarah's torso and genitals where Dorsey had poured what appeared to be bleach. Additionally, testing revealed that that sperm cells recovered from Sarah's body contained DNA consistent with Dorsey and men from a common paternal lineage. This eliminated Ben as a source of the sperm. Statistical analysis revealed that the DNA profile would not be expected to occur in more than .23 percent of the Caucasian population.

On December 26, Dorsey surrendered to police and admitted that he was "the right guy concerning the deaths of [Sarah and Ben]." Dorsey was charged with two counts of first-degree murder. In March 2008, Dorsey pleaded guilty to both counts.

---

1. All references to statutes are to RSMo 2000, unless specified otherwise.

Following a separate penalty phase trial, the jury assessed sentences of death for each murder, and the trial court sentenced Dorsey accordingly. Dorsey raises seven points on appeal.

### *ANALYSIS*

### I. *Instructional error*

In his second, sixth and seventh points on appeal, Dorsey argues the trial court improperly instructed the jury.

### *Instruction No. 10*

In his second point on appeal, Dorsey argues that the trial court plainly erred in submitting Instruction No. 10 based on MAI–CR 3d 314.46. Instruction 10 stated as follows:

> As to Count I and Count II, you are not compelled to fix death as the punishment even if you do not find the existence of facts and circumstances in mitigation of punishment sufficient to outweigh the facts and circumstances in aggravation of punishment. You must consider all the evidence in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.

Dorsey argues that the reference to Count I and Count II was improper because it instructed the jury to consider evidence as to both counts in deciding the punishment for each individual count and, therefore, "allowed the jury to sentence [him] to death on each count based on evidence applicable to the other count."

■ Plain error is found when the alleged error "facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *State v. Salter*, 250 S.W.3d 705, 713 (Mo. banc 2008), quoting *State v. Baker*, 103 S.W.3d 711, 723 (Mo. banc 2003). To demonstrate that an instructional error

constitutes plain error, the defendant must show that the trial court "so misdirected or failed to instruct the jury" that the error affected the jury's verdict. *Id.*

An instruction patterned after MAI–CR3d 314.46 must be given during the penalty phase. The general instructions provide that when there "is more than one count of murder in the first degree where the death penalty is not waived, repeat this series of instructions for each count." The trial court erred in submitting Instruction No. 10 because the instruction was not repeated for both Count I and Count II. The issue then becomes whether this error so misdirected the jury that it resulted in a manifest injustice.

■ Although Instruction No. 10 was erroneous, Dorsey was not prejudiced. The jury was instructed properly that, with respect to each murder, it had to find one or more statutory aggravating circumstances beyond a reasonable doubt. The jury further was instructed that, as to each count, it had to determine whether evidence in mitigation of punishment outweighed evidence in aggravation of punishment. Finally, there were two separate verdict-mechanics instructions instructing the jury regarding the decision-making process that had to be applied to both Count I and Count II. When considered in conjunction with the other proper instructions in the case, the fact that Instruction No. 10 referred to both counts simply indicated to the jury that the "consider all the evidence" directive had to be applied to both counts individually. The trial court did not plainly err by submitting Instruction No. 10 to the jury.

### *Instruction Nos. 7 and 9*

■ Dorsey's sixth point is that the trial court plainly erred in submitting Instruction Nos. 7 and 9 regarding the

"weighing step" in which the jury assesses the relative strength of the aggravating and mitigating evidence in the case. Dorsey first asserts that the instructions improperly failed to require the state to prove beyond a reasonable doubt that the evidence in aggravation outweighs the mitigating evidence. The penalty phase instructions in this case required the jury to determine whether there were facts or circumstances in mitigation of punishment that were sufficient to outweigh the facts or circumstances in aggravation of punishment. The court did not instruct the jury that the "weighing step" was subject to the beyond a reasonable doubt burden of proof. Statutory aggravators have to be submitted to the jury and found beyond a reasonable doubt. *State v. Whitfield*, 107 S.W.3d 253, 258, 259 (Mo. banc 2003). However, the jury's "weighing" of the aggravation and mitigation evidence is not subject to proof beyond a reasonable doubt because it is not a factual finding that increases the potential range of punishment. *Zink v. State*, 278 S.W.3d 170, 192–193 (Mo. banc 2009). *See also State v. Glass*, 136 S.W.3d 496, 520–21 (Mo. banc 2004); *State v. Gill*, 167 S.W.3d 184, 193 (Mo. banc 2005).

Next, Dorsey argues that the trial court erred by not instructing the jury that the state had to prove evidence of unadjudicated bad acts beyond a reasonable doubt. *Glass* asserts that in *State v. Debler*, 856 S.W.2d 641 (Mo. banc 1993), this Court noted that unadjudicated bad acts lack the reliability of prior convictions and that there must be some instruction guiding the jury's consideration of that evidence. *Debler* is distinguishable because the issue there was the lack of notice. *Debler* does not require the jury to be instructed on what weight to give evidence of unadjudicated criminal acts. *Glass*, 136 S.W.3d at 517; *see also State v. Christeson*, 50 S.W.3d 251, 269–70 (Mo. banc 2001); *State*

*v. Ervin*, 979 S.W.2d 149, 158 (Mo. banc 1998). This Court repeatedly has rejected the claim that the admission in the penalty phase of unadjudicated bad acts violates due process because the state is not required to prove those acts beyond a reasonable doubt. *Glass*, 136 S.W.3d at 517.

Finally, Dorsey argues that the instructions erroneously placed the burden of proof on him with respect to mitigating evidence. This Court previously has addressed this argument and rejected it. In *State v. Johnson*, this Court held that the same mitigating evidence instruction at issue in this case does not shift the burden of proof improperly. 284 S.W.3d 561, 588–89 (Mo. banc 2009); *see also Kansas v. Marsh*, 548 U.S. 163, 170–71, 126 S.Ct. 2516, 165 L.Ed.2d 429 (2006); *State v. Taylor*, 134 S.W.3d 21, 30 (Mo. banc 2004).

### Duplicative Aggravators

■ Dorsey's last claim of instructional error is that the statutory aggravating circumstances submitted to the jury were duplicative and, therefore, allowed the jury to "double count them."

With respect to Ben's murder, the jury found three aggravating circumstances:

1. [That] the murder of Benjamin Bonnie was committed while the defendant was engaged in the commission of another unlawful homicide of Sarah Bonnie.

2. [That] the defendant murdered Benjamin Bonnie for the purpose of the defendant receiving money or any other thing of monetary value from Benjamin Bonnie or another.

3. [That] the murder of Benjamin Bonnie involved depravity of mind and [that], as a result thereof, the murder was outrageously and wantonly vile, horrible and inhuman.

The jury was instructed that it only could find "depravity of mind" if it found

"[t]hat the defendant killed Benjamin Bonnie as a part of defendant's plan to kill more than one person and thereby exhibited a callous disregard for the sanctity of all human life." Although the first and third aggravators related to the fact that Dorsey killed two people, they emphasized different aspects of the murders. The first aggravator focused on the fact that Dorsey actually killed Sarah and Ben, while the third focused on the fact that Dorsey planned to kill them. This sufficiently differentiated the aggravators. *See State v. Anderson*, 79 S.W.3d 420, 441–442 (Mo. banc 2002) (rejecting claim that the aggravators of "multiple homicides" and "depravity of mind" based on a plan to kill more than one person were duplicative).

■ With regard to the murder of Sarah Bonnie, the jury found four aggravating circumstances:

1. [That] the murder of Sarah Bonnie was committed while the defendant was engaged in the commission of another unlawful homicide of Benjamin Bonnie.
2. [That] the defendant murdered Sarah Bonnie for the purpose of the defendant receiving money or any other thing of monetary value from Benjamin Bonnie or another.
3. [That] the murder of Sarah Bonnie involved depravity of mind and [that], as a result thereof, the murder was outrageously and wantonly vile, horrible and inhuman.
4. [That] the murder of Sarah Bonnie was committed while the defendant was engaged in the perpetration of rape.

The jury was instructed that it only could find "depravity of mind" if it found "That the defendant, while killing Sarah Bonnie or immediately thereafter, had sexual intercourse with her." The jury further was instructed that "[a] person commits the crime of forcible rape if the person has sexual intercourse with anoth-

er person by the use of forcible compulsion." Dorsey argues that the third and fourth aggravators were duplicative. Although the two aggravators both related to the fact that Dorsey had sexual intercourse with Sarah Bonnie, they emphasized different aspects of the murder. The third aggravator focused on Dorsey's "depravity of mind" in committing the murder by focusing on the fact that he sought sexual gratification during the murder. The fourth aggravator focused on the forcible rape that Dorsey committed contemporaneously with the murder and, therefore, focused on the fact that Dorsey committed two violent crimes simultaneously. As with the aggravators submitted for Ben's murder, the aggravators submitted for Sarah's murder were not duplicative.

## II. *Statutory Aggravator: Rape*

■ In his third point, Dorsey argues there was insufficient evidence to support that statutory aggravating circumstance that he raped Sarah. Specifically, Dorsey asserts there was no evidence that Sarah was alive for the sexual assault and, consequently, there was no evidence of sexual contact through forcible compulsion and without her consent.

Missouri's forcible rape statute provides that "a person commits the crime of forcible rape if such person has sexual intercourse with another person by the use of forcible compulsion...." Section 566.030(1). The statute is silent as to whether the victim must be alive during the sexual contact at the time of penetration. In *State v. McLaughlin*, this Court invoked the "ongoing criminal assault rule" to hold that when the forcible compulsion that leads to the rape begins before the victim's death, the defendant is guilty of rape even if the jury believes the

defendant killed the victim before penetration or before the sexual assault was concluded. 265 S.W.3d 257, 267 (Mo. banc 2008). In other words, "[i]t is rape where defendant both kills and sexually assaults a victim in a single, continuous act, or in a series of closely related acts, and where, as a part of the course of conduct, defendant uses forcible compulsion against the victim, even if portions of the rape, including penetration, occur once the victim already has been killed." *Id.* As such, whether Sarah was alive for the sexual assault is immaterial.

There was sufficient evidence to support a finding that Dorsey murdered Sarah while committing a rape. The evidence showed that Dorsey used deadly force to overcome Sarah's resistance and then engaged in sexual intercourse with her. DNA testing revealed the existence of sperm cells that almost certainly came from Dorsey or another man from his paternal lineage. There was no other man present at Sarah and Ben's house on the night of the murder, except Dorsey, who fit this profile. Finally, the fact that Dorsey poured bleach over Sarah's torso and genitalia indicates that he attempted to remove physical evidence of the rape before leaving the house. Dorsey's argument that there was insufficient evidence to support the forcible rape aggravator is without merit.

### III. *Statements in voir dire and closing argument*

In his fourth point, Dorsey argues that the trial court committed plain error in failing, on its own initiative and without objection from Dorsey, to declare a mistrial due to several statements by the prosecutor during *voir dire* and closing argument. Under plain error review, Dorsey must prove that the alleged misstatements had a decisive impact on the outcome of the trial. *State v. Middleton*, 995 S.W.2d 443, 456 (Mo. banc 1999).

Dorsey argues that, on three occasions, the state misstated the law during *voir dire*. First, Dorsey argues that the prosecutor improperly referred to previous statutory language that required a life sentence if the trier of fact did not find that the aggravating circumstances "warrant" the death penalty. Section 565.030.4(2). It is true that section 565.030.4 no longer employs the term "warrant." However, the current version of the statute still provides that a life sentence will be imposed "[i]f the trier decides under all of the circumstances not to assess and declare the punishment at death." Section 565.030.4(4), RSMo Cum.Supp.2009. Moreover, section 565.032.1(2) requires the trial court to instruct the jury to determine whether "the evidence as a whole justifies a sentence of death or a sentence of life imprisonment without eligibility for probation, parole, or release except by act of the governor." The prosecutor's use of the term "warrants" accurately conveyed to prospective jurors the basic decision-making process that would be required of jurors.

Second, Dorsey argues the prosecutor improperly stated that Dorsey bore the burden of proving that mitigation evidence was stronger than evidence of aggravating circumstances. During voir dire, the prosecutor stated:

But in that process of weighing them, you weigh all of the facts in the case, aggravating circumstances, and mitigating circumstances, and if you find unanimously, you know, those mitigating factors just aren't enough to overcome or outweigh the aggravating facts taken as whole, then that step go [sic] is over and you now go to step three. And that is decision time with both options open.

The prosecutor's comments are a correct statement of the law. Section 565.030 provides that the jury must impose a sentence of life imprisonment if it "concludes that there is evidence in mitigation of punishment ... sufficient to outweigh the evidence in aggravation." In *Marsh*, 548 U.S. at 178–179, 126 S.Ct. 2516, the Supreme Court made it clear that "a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency."

■ Finally, Dorsey argues that the prosecutor misstated the law by stating that in the "final step," the jury's "choice, whether for death or life in prison without parole, must be unanimous, either way." Dorsey argues that this statement improperly informed the jury that a life sentence only could result from unanimous agreement. Dorsey is correct that a life sentence can result when the jury cannot decide unanimously certain facts regarding punishment. The prosecutor made this clear by specifically telling the prospective jurors that a non-unanimous jury would be required *to* assess a life sentence. The trial court did not err in declining to declare, *sua sponte*, a mistrial based on the prosecutor's statements during *voir dire*.

■ Dorsey further argues that on three occasions in closing argument the prosecutor made improper arguments. First, Dorsey argues the prosecutor improperly stated that "if you find one of [the statutory aggravators] for one or both counts, then step one is satisfied ... then you go to step two." Dorsey argues this statement could have led the jurors to believe that "if they found a statutory aggravator as to either Count, step one was satisfied as to both Counts." This argument is without merit. The prosecutor reminded the jury that there were different aggravating circumstances "for each

count" and that the jury has to "make those decisions independently." Moreover, Dorsey's counsel admitted the existence of aggravating circumstances under both counts by conceding that Dorsey had killed each victim during the commission of another homicide.

■ Second, Dorsey argues the prosecutor improperly characterized him as "evil" to persuade the jury to decide his sentence on the basis of "passion and prejudice" instead of the law. The prosecutor's statements were made in response to defense counsel's argument that the evidence showed that Dorsey "does have something inside of him that good people like and that good people can feel devoted enough and understanding enough to" to testify on his behalf. Specifically, the prosecutor argued as follows:

That's not—Now, is there good and evil in every human being? Of course there is.

The proportions are different from one person to the next, perhaps, but we all have the capacity to do great evil and to do great good. That's not the point here. It never was.

The question is: Given everything you know, what is the appropriate punishment for this man and this case, taking all of the facts into consideration? Because these acts and the repercussions of those acts on these families is evil. And make no mistake, friends, there is evil in the world.

A much smarter man than I am once said, "The only thing necessary for evil to triumph is for good men to do nothing." Well, what I'm afraid of is, if you do not come back with the most severe penalty, it will have the impact of having done nothing.

Prior cases have held that even if the prosecutor does characterize the defendant

directly in a harsh light, there is no prejudice if the evidence supports the characterization. *See, e.g., State v. Simmons*, 944 S.W.2d 165, 182 (Mo. banc 1997) (no error in characterizing the murder defendant during the guilt phase of closing argument as a "predator" who had an "evil mind" where the characterizations were supported by evidence that the defendant premeditated the victim's death and threw the victim from a bridge). In this case, the prosecutor's reference to "evil" was not a reference to Dorsey's character but instead was aimed at focusing the jury on the consequences of Dorsey's crimes. The argument was permissible.

█ Dorsey also argues the trial court erred in allowing the prosecutor to state in his closing argument that if the jury elected to give a life sentence, then the jury would have "done nothing." In *State v. Forrest*, 183 S.W.3d 218, 228 (Mo. banc 2006), this Court upheld the use of the same argument using the same quote, noting that the quote "interrelate[d] with the concept of whether the jury should be merciful to Appellant." The use of this quote was permissible, and the trial court did not plainly err in permitting the argument.

### IV. *Crime scene photographs*

█ In his fifth point, Dorsey asserts that the trial court abused its discretion in admitting exhibits 20, 21, 28 and 29 consisting of four color photographs of the victims at the crime scene. Dorsey argues that the photographs were largely irrelevant, duplicative, and introduced solely to engender passion and prejudice among the jurors.

█ A trial court has broad discretion in the admission of photographs, and its decision will not be overturned absent an abuse of discretion. *State v. Johnson*, 244 S.W.3d 144, 161 (Mo. banc 2008).

Generally, gruesome photographs are relevant and admissible if they: (1) show the nature and location of wounds; (2) enable jurors to better understand the testimony at trial; and (3) aid in establishing an element of the state's case. *Id.* A relevant photograph should not be excluded on the grounds that the crime itself was gruesome. *Id.*

Exhibit 20 showed the position of Sarah and Ben in their bed. This photograph is relevant because the jury was required to determine the existence of aggravating circumstances, including whether the murders were committed during the commission of another murder and reflected a "depravity of mind." The fact that the bodies were so close to one another was relevant to the state's theory that the murders were related and that Dorsey planned to kill both Ben and Sarah contemporaneously. The trial court did not abuse its discretion in admitting Exhibit 20.

Exhibit 21 showed Sarah's body and focused on her torso and genitals. The photograph showed the "pour marks" on her body and the contents of her wallet around her body. This photograph was relevant to prove the aggravating circumstance that Dorsey committed the murders to obtain money or items of value from Sarah and Ben. The depiction of the "pour marks" supported the inference that Dorsey attempted to eliminate evidence of sexual contact. This inference made the photograph relevant to the state's argument that Dorsey raped Sarah while committing the murder. The trial court did not abuse its discretion in admitting Exhibit 21.

Exhibits 28 and 29 were autopsy photographs depicting the wounds suffered by both victims. The photographs were relevant because they assisted the jury in understanding the medical examiner's testimony regarding the nature and location of

the wounds. *See State v. Murray*, 744 S.W.2d 762, 772 (Mo. banc 1988) (autopsy photographs relevant to assist jury in understanding medical examiner's testimony). The trial court did not abuse its discretion in admitting Exhibits 28 and 29.

## V. *Proportionality*

■ Dorsey asserts his death sentence is excessive and disproportionate due to several alleged errors at trial and because other similar cases have resulted in sentences of life imprisonment instead of the death penalty.

Section 565.035 requires this Court's independent review of Dorsey's death sentences. The statute requires this Court to determine:

(1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

(2) Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in subsection 2 of section 565.032 and any other circumstance found; and

(3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant.

Section 565.035.3.

### *Passion and prejudice*

Dorsey argues that the allegations of trial error covered in Points II, III, V and VII of his brief establish that his death sentence was the result of passion, prejudice and other arbitrary factors. However, as previously discussed, Dorsey's allegations of trial error are without merit. Consequently, Dorsey cannot establish that these alleged errors resulted in a sentence of death imposed under the influence of passion, prejudice or any other arbitrary factor.

### *Aggravating circumstances*

With respect to Ben's murder, the jury found three aggravating circumstances:

1. [That] the murder of Benjamin Bonnie was committed while the defendant was engaged in the commission of another unlawful homicide of Sarah Bonnie.

2. [That] the defendant murdered Benjamin Bonnie for the purpose of the defendant receiving money or any other thing of monetary value from Benjamin Bonnie or another.

3. [That] the murder of Benjamin Bonnie involved depravity of mind and [that], as a result thereof, the murder was outrageously and wantonly vile, horrible and inhuman.

With respect to the murder of Sarah Bonnie, the jury found four aggravating circumstances:

1. [That] the murder of Sarah Bonnie was committed while the defendant was engaged in the commission of another unlawful homicide of Benjamin Bonnie.

2. [That] the defendant murdered Sarah Bonnie for the purpose of the defendant receiving money or any other thing of monetary value from Benjamin Bonnie or another.

3. [That] the murder of Sarah Bonnie involved depravity of mind and [that], as a result thereof, the murder was outrageously and wantonly vile, horrible and inhuman.

4. [That] the murder of Sarah Bonnie was committed while the defendant was engaged in the perpetration of rape.

The evidence supported each of the aggravating circumstances found by the jury. There is no dispute that Dorsey killed each victim while engaged in the unlawful homicide of the other. There was also strong

evidence that Dorsey killed Sarah and Ben for pecuniary gain. After killing Sarah and Ben, Dorsey took their belongings and tried to pay his debts. As previously discussed, the evidence supported a finding that Dorsey murdered Sarah while committing a rape.

### Similar cases

There are numerous death penalty cases in which this Court has upheld death sentences when more than one victim was murdered. *See, e.g. State v. Deck*, 303 S.W.3d 527, 552 (Mo. banc 2010); *State v. Taylor*, 298 S.W.3d 482, 513 (Mo. banc 2009); *State v. Smith*, 32 S.W.3d 532, 559 (Mo. banc 2000); *State v. Mease*, 842 S.W.2d 98 (Mo. banc 1992); *State v. Hunter*, 840 S.W.2d 850 (Mo. banc 1992); *State v. Ervin*, 835 S.W.2d 905 (Mo. banc 1992); *State v. Powell*, 798 S.W.2d 709 (Mo. banc 1990); *State v. Reese*, 795 S.W.2d 69 (Mo. banc 1990); *State v. Young*, 701 S.W.2d 429 (Mo. banc 1985).

Likewise, this Court has affirmed a death sentence where the defendant raped the victim at the time of the murder. *McLaughlin*, 265 S.W.3d at 277. This Court has also affirmed death sentences where the defendant has killed for pecuniary gain. *Forrest*, 183 S.W.3d 218 at 232; *State v. Storey*, 40 S.W.3d 898, 915 (Mo. banc 2001). Dorsey's death sentence is not disproportionate given the resolution of these similar death penalty cases.

In *Deck*, 303 S.W.3d at 527, (J. Stith concurring), and *State v. Anderson*, 306 S.W.3d 529, 544 (Mo. banc 2010) (J. Breckenridge concurring), a majority of this Court held that the proportionality review mandated by section 565.035.3 requires consideration of all factually similar cases in which the death penalty was submitted to the jury, including those resulting in a sentence of life imprisonment without the possibility of probation or parole. The concurring opinions in *Deck* and *Anderson* state the applicable law with respect to proportionality review.

Dorsey points to *State v. Little*, 861 S.W.2d 729, 730 (Mo.App.1993), in which the state unsuccessfully sought the death penalty for a defendant charged with three counts of first-degree murder, two counts of forcible rape, two counts of first-degree robbery and one count of attempted forcible rape. Although the facts of *Little* are no less gruesome than the facts of this case, the defendant in that case did not receive a death sentence. However, as the state notes, it may be that the result in *Little* was the aberration. Perhaps for that reason, Dorsey points to no other published opinions in Missouri involving multiple homicides and additional aggravating factors in which the jury declined to impose a death sentence. Dorsey's death sentence is not disproportionate to other similar cases.

### CONCLUSION

For the foregoing reasons, the judgment is affirmed.

WOLFF, BRECKENRIDGE and STITH, JJ., concur.

PRICE, C.J., RUSSELL and FISCHER, JJ., concur in joint separate opinion filed.

WILLIAM RAY PRICE, JR., Chief Justice, MARY R. RUSSELL, Judge, ZEL M. FISCHER, Judge, concurring jointly.

We concur in the principal opinion except as to the proportionality analysis. We agree that Dorsey's capital sentences are proportional to his crimes. However, we disagree that "similar" cases for proportionality review analysis requires consideration of cases that resulted in a sentence of life imprisonment without the

possibility of probation or parole. We have concurred in this analysis in *State v. Deck*, 303 S.W.3d 527 (Mo. banc 2010); *State v. Anderson*, 306 S.W.3d 529 (Mo. banc 2010); and *State v. Davis*, 318 S.W.3d 618 (Mo. banc 2010) (Fischer, J., concurring), and have agreed with the longstanding precedent of proportionality review holding that consideration of "similar" cases requires consideration of only those cases resulting in a death sentence.

The mandates have been issued in *Deck* and in *Anderson*. *Davis* is now a final judgment. Although we have disagreed with the majorities' proportionality analyses in those opinions, we must follow the decisions of this Court, even if we disagree, or even the decisions appear to be in error. See *State v. Buchanan*, 115 S.W.3d 841, 842 (Mo. banc 2003) (Benton, Price, & Limbaugh, JJ., jointly concurring); U.S. CONST. art. VI; MO. CONST. art. V, sec. 2. Although we will continue to disagree with the majority's proportionality analysis, we will not object in all opinions hereafter.